WILLIAM SEEGER

*v.*

FREDERICK MUELLER *et al.*

*Filed at Ottawa May 14, 1890.*

1. HIGHWAYS, *streets, alleys, etc.—over school lands—powers of school trustees.* Under sections 17 and 18 of the "Act to establish and maintain public schools," approved February 12, 1849, the power conferred on the school trustees to lay out roads, streets and alleys was confined to cases where they laid out school lands into town or village lots. In other cases they had no power to lay out roads, or to appropriate or dedicate any part of such lands for public highways.

2. The powers granted to trustees of schools by sections 16, 17 and 18 of the act mentioned, will not be extended by implication, but in determining their extent and scope a strict interpretation will be adopted.

3. The laying out of roads, streets and alleys, as provided in section 18 of the School act of 1849, relates to town or village plats, and not to subdivisions of land where there was no town or village, as that power was not necessary to the making of an ordinary subdivision, and any attempt of the school trustees to lay out a road was *ultra vires* and void.

4. EASEMENT—*estoppel—sale of lots with reference to an easement or roadway.* The owner of land who plats the same, and makes sales of the different parts of it according to the plat, will be estopped to deny the right of the several purchasers to an easement in the roads and ways depicted on the plat, even though the plat may not be executed according to the statute, and it may be admitted that the several purchasers would be able to assert such right as against each other. But the rule is different where the plat is made by municipal officers, whose powers in the premises are limited and defined by statute.

5. INJUNCTION—*to prevent the closing or obstructing of an impracticable way.* A court of equity will not enjoin a party from placing obstructions upon a strip of land claimed as a highway or easement, and require him to remove fences placed by him thereon, when the evidence shows that the way is of no practical value, either to the public or to the complainant, owing to the roughness of the ground over which the way runs, and the impracticability of making the same passable. The law will not require any one to do a vain and useless thing.

6. SCHOOL TRUSTEES—*as a quasi municipal corporation—construction as to grants of power.* The statute of 1849 made trustees of schools a *quasi* municipal corporation, and the same rule of interpretation will be applied to the statute from which they derive their powers, which

obtains in case of other municipal corporations. Such bodies act wholly under a delegated authority, and can exercise no powers which are not, in express terms or by fair implication, conferred upon them.

7. MUNICIPAL CORPORATIONS—*of their powers—generally—strict construction.* Municipal corporations have no powers which are not conferred on them in express terms or by fair implication. Any ambiguity or doubt arising out of the terms used by the legislature in conferring their powers, must be resolved in favor of the public. A fair, reasonable doubt concerning the existence of a power is resolved against the corporation, and the power is denied.

8. SAME—*estoppel—as to acts of municipalities or their officers.* No estoppel can ordinarily arise from the act of a municipal corporation or officer done in violation of or without authority of law. Every person is presumed to know the nature and extent of the powers of municipal officers, and therefore can not be deemed to have been deceived or misled by acts done without legal authority.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Jo Daviess county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. E. L. BEDFORD, for the plaintiff in error:

It is not necessary, in order to dedicate the roads in this case to public or private use, that the land subdivided should have been in an incorporated city or village, for the eighteenth section refers not only to subdivisions into village lots, but into lots of eighty acres, with "roads" between; and all similar divisions thereafter made are declared legal, and such roads public highways. These roads become roads by a statutory dedication. Laws of 1849, p. 158.

But if the statute had been imperfectly complied with, the sale of these lots according to the plat or map containing these roads upon which the lots abutted, or a sale made in the absence of this statute, would have been a common law dedication of these roads. *Field* v. *Carr,* 59 Ill. 198; *Gosselin* v. *Chicago,* 103 id. 623; *Godfrey* v. *Alton,* 12 id. 30; *Smith* v. *Flora,* 64 id. 93.

There is no higher evidence of a dedication than such a plat. It informs the public that the space marked upon it as streets and alleys are for the use of the public, and until the town becomes incorporated, are under control of the county authorities, to be kept in repair, if necessary. *Waugh* v. *Leach,* 28 Ill. 491.

The record shows that the purchasers at the sale of the lots by the school commissioners, purchased and took their deeds from the State with reference to the numbers employed on this plat. These grantees are estopped from denying the validity of the plat by recognizing the same in purchasing, and by express recital in the patents issued to them by the State. *Cases supra; Gridley* v. *Hopkins,* 84 Ill. 531.

The State, which was the vendor in this case, made reference in its patents to the map made by the trustees of schools. When a vendor makes reference to the plat of a city made by commissioners, the plat becomes a part of the deed. "He thereby adopts the map, and makes appropriation or dedication of the ground laid out as streets to public use." *Trustees* v. *Walsh,* 57 Ill. 368, and authorities cited.

The map is a descriptive part of the conveyance. *Piper* v. *Connelly,* 108 Ill. 652.

It is a sufficient recognition that the purchasers received conveyances for their lots, in which the plat was referred to, and the lots by numbers given them on this plat. *Cases supra; Field* v. *Carr,* 59 Ill. 201.

The purchasers at the sale are not only estopped by the plat, and deeds containing recitals expressly recognizing and referring to the plat, "but their privies in estate," as heirs and grantees, are likewise estopped by the plat, and can not deny its validity. *Smith* v. *Heath,* 102 Ill. 139; *Warren* v. *President,* 15 id. 239; *Byrne* v. *Morehouse,* 22 id. 605.

It is unimportant whether the public have so far accepted the dedication as to be bound to keep the roads in repair, since the question involved is one of private right; nor whether the

fee in the roads remains in adjoining property holders. It is sufficient that the complainant is entitled to have the road kept open for use. *Zearing* v. *Raber,* 74 Ill. 411.

The lots in the school section were sold with reference to a plat exhibiting certain roads, located in a manner calculated to give purchasers access to such lots. This sale implied a grant or covenant to purchasers, that roads indicated upon the plat should be forever open to the purchasers and all persons having occasion to use them. "The purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege or advantage which the plat represents as belonging to them." *Zearing* v. *Raber,* 74 Ill. 411.

Easements are appurtenant when one terminus is on the land of the party claiming. They are in the nature of covenants running with the land, and, like them, must respect the thing granted and concern the land conveyed. They pass by a conveyance of the land under the term "appurtenances," without being expressly named. *Garrison* v. *Rudd,* 19 Ill. 563.

It is a matter of no importance whether the street so designated by reference to the map has ever been opened or used, or not. *In re Thirty-second street,* 19 Wend. 130.

An easement appurtenant can not be lost by a neglect to assert, use or enjoy it for a period of twenty years. *Arnold* v. *Stevens,* 24 Pick. 106; *Banner* v. *Augier,* 2 Allen, 128; *Hayford* v. *Spokefield,* 100 Mass. 490; *Owen* v. *Field,* 102 id. 114; *Barnes* v. *Lloyd,* 112 id. 244; *Taylor* v. *Hampton,* 4 McCord, 96; *Elliot* v. *Rhett,* 5 Rich. 405; *Cornung* v. *Gould,* 16 Wend. 531; *Wiggins* v. *McCleary,* 49 N. Y. 436; *Hale* v. *McAughey,* 51 Pa. St. 43; *Ward* v. *Ward,* 7 Exch. 838; *Carr* v. *Foster,* 3 O. B. 581; *Crossley* v. *Lithlower,* 2 Ch. App. 478; *Cook* v. *Magross,* L. R. (6 Eq.) 177.

Messrs. D. & T. J. SHEEAN, for the defendants in error:

The trustees had no power to lay out a highway, and if they did, they failed to comply with the law. Most of the authori-

ties of plaintiff in error relate to the laying out of land into village or town lots, which he attempts to apply to this case. Referring to them, he says that if the statute had been imperfectly complied with, yet if defendants in error bought the lots according to the plat containing these roads upon which the lots abutted, this would make a common law dedication of these roads. The defendants in error bought no lots abutting on roads, but bought the alleged roads themselves.

Equity will not do that which will be of no benefit to the party asking it, and only a hardship on the party coerced, or, as the maxim is, the law does not require any one to do vain or useless things. *Railroad Co.* v. *Healy,* 94 Ill. 416; *Green* v. *Green,* 34 id. 327.

Courts of equity are not bound at all times to enforce a strict legal right. *Lewis* v. *Lyons,* 13 Ill. 117; *Stone* v. *Pratt,* 25 id. 25.

Even in contracts, equity will not decree the specific performance of a contract where the decree would require the doing of useless acts. *Werden* v. *Graham,* 107 Ill. 169.

Equity will not do that which will be of no benefit to the party asking it, and only a hardship upon the party coerced. *Railroad Co.* v. *Healy,* 94 Ill. 416.


Mr. Justice Bailey delivered the opinion of the Court:

This was a bill in chancery, brought by William Seeger against Frederick Mueller and others, to restrain the defendants from placing obstructions upon a certain strip of land twenty feet in width, which the complainant claims the right to use, enjoy and improve as a public highway, or at least as a private way appurtenant to his lands. The complainant also prays that the defendants be required to abate the nuisances of fences and other obstructions placed by them on said strip of land. The alleged street or way is on section 16, township 28, range 1, west of the 4th principal meridian, said

section being a part of the common school lands granted by the United States to the State, and it appears that on or about the 10th day of December, 1855, the trustees of the township in which said land was situated, with a view of selling the same, caused said section to be divided into twenty-six tracts or lots, the largest containing fifty and eighty one-hundredths acres of land and the smallest ten acres, and caused a plat of such division to be made.

There appeared on the margin of said plat running around the entire section and bordered by parallel lines, a strip of land on which was written the words, "Road 20 feet wide;" also running east and west across the center of the section a strip marked, "Road 33 feet wide," and in two other places running part way across the section were similar strips marked, "Road 20 feet wide." The controversy in this case relates to the strip on the south and east margins of the plat.

Shortly after said plat was made, the several lots or tracts into which said section was divided were sold to various purchasers, and patents were thereupon issued by the State to such purchasers. The complainant is now the owner of three of said lots, viz, those numbered 17, 19 and 22, by mesne conveyances from the patentees. The defendants are in like manner the owners of various of the other lots adjoining. Said patents, in describing the several tracts of land granted, refer to the plat, but they also contain words of description which include in the grants all the land in the section without reference to the alleged roads. Thus, the description in the patent conveying lots 17 and 19, each of which had upon its border one of the strips of land designated as roads, was as follows:

"A certain lot of land lying in the county aforesaid, being part of section number 16, granted by the United States to the State of Illinois for the use of the inhabitants of township 28, north, range number 1, west of the 4th principal meridian, for the use of schools, known and designated on the map of said section as made by the trustees of school lands within said

township, as lot number 17, being the south-west quarter of the north-east quarter of the south-east quarter, and the south fractional half of the north-west quarter of the south-east quarter, and lot number 19, being the north-east quarter of the south-east quarter of the south-east quarter, (all east of river), of section, township and range aforesaid."

It appears that the land over which the road or way which the complainant is seeking to have opened runs is rough and hilly, and is traversed by deep ravines and gullies, and that a road over it can not be made passable without the expenditure of a large sum of money; that it has never been travelled or worked by the public as a highway, but on the contrary, that the public authorities have expressly refused to expend money upon it because of its impracticability, and have in fact condemned it and advised the adjoining proprietors to fence it up, and that portions of it have been fenced up for over twenty years.

The complainant claims that by said plat, the strips of land designated as roads were dedicated to the public and thereby became and still are public highways, in the enjoyment of which he, by reason of the situation of his land, should be protected; or, if the plat was insufficient to effect a dedication, the complainant and his grantors having purchased with reference to the plat, obtained a perpetual easement, in the nature of a private way, over the lands so designated. The bill alleges certain prior proceedings at law brought to determine in that tribunal the complainant's right to said easement, and which, as he claims, resulted in his favor, and he therefore insists that he is now entitled to seek protection in the enjoyment of his easement in a court of equity.

Answers and replications were filed, and the cause coming on for hearing on pleadings and proofs, a decree was rendered dismissing the bill at the complainant's costs for want of equity. Said decree, on appeal to the Appellate Court was affirmed, and the record is now brought here by writ of error to that court.

The authority by virtue of which the trustees of schools divided and platted the land in question was that conferred by the "Act to establish and maintain common schools," approved February 12, 1849. Laws of 1849, p. 153. Section 16 of that act provided that, when the inhabitants of any township should desire the sale of the common school lands of the township, they should present to the school commissioner of the county a petition for their sale, signed by a certain proportion of the adult white male inhabitants of the township the signatures to such petition to be verified by certain affidavits, and sections 17 and 18 are as follows:

"§ 17. When the petition and affidavits are delivered to the school commissioner as aforesaid, he shall notify the trustees of schools of said township thereof, and said trustees of schools shall immediately proceed to divide the land into tracts or lots of such form and quantity as will produce the largest amount of money; and after making such division, a correct plat of the same shall be made, representing all divisions, with each lot numbered and defined so that its boundaries may be forever ascertained. Said trustees of schools shall then fix a value on each lot, having regard to the terms of sale, certify to the correctness of the plat, (stating the value of each lot per acre, or per lot, if less than an acre), and referring to and describing the lot in the certificate, so as fully and clearly to distinguish and identify each lot; which plats and certificate shall be delivered to the school commissioner, and shall govern him in advertising and selling said lands.

"§ 18. In subdividing common school lands for sale, no lot shall contain more than eighty acres, and the division may be made into town or village lots, with roads, streets or alleys between and through the same; and all such divisions, with all similar divisions hereafter made, are hereby declared legal; and all such roads, streets and alleys, public highways."

It seems to us to be scarcely susceptible of doubt that the power to lay out roads, streets and alleys conferred by these

sections upon school trustees was confined to cases where they laid out school lands into town or village lots, and that in other cases they had no power to lay out roads, or to appropriate or dedicate any part of such lands for public highways. The powers granted by said sections to trustees of schools will not be extended by implication, but in determining their extent and scope, a strict interpretation will be adopted. The thirtieth section of said act declares trustees of schools bodies corporate and politic, thus constituting them municipal or *quasi* municipal corporations, and the same rule of interpretation should apply to the statute from which they derive their powers which obtains in case of other municipal corporations. Such bodies act wholly under a delegated authority, and can exercise no powers which are not in express terms or by fair implication conferred upon them. *Thompson* v. *Lee County*, 3 Wall. 327. Any ambiguity or doubt arising out of the terms used by the legislature in conferring their powers must be resolved in favor of the public. *Minturn* v. *Larue*, 23 How. 435. Or as said by Judge Dillon: "Any fair, reasonable doubt concerning the existence of a power is resolved against the corporation, and the power is denied." 1 Dill. on Munic. Corp. sec. 89.

Section 17 under which the lands in question were subdivided and platted makes no reference whatever to the laying out of roads or highways, and the subdivision there contemplated is not one which involved or necessitated the creation of highways. It was a mere division of the land for the purpose of putting it upon the market in parcels smaller than the entire tract, leaving the purchasers to acquire easements in the nature of public or private ways in the ordinary mode. But where lands were divided into town or village lots, as provided in section 18, the laying out of streets and alleys was a necessary part of the subdivision. A town or village plat can not be laid out without streets, and is not usually laid out without both streets and alleys. The laying out of roads, streets and alleys as provided for in section 18 plainly relates

to town or village plats, and not to subdivisions of land where there was no town or village; and as the laying out of roads was not necessary to and was not therefore implied in the power to make ordinary subdivisions of land, it did not exist, and the acts of the school trustees in attempting to lay out roads on the land in question was *ultra vires* and void.

Nor can any force be given to the suggestion that the purchasers of said land, having bought with reference to the plat, are entitled to an easement in the roads delineated thereon upon the principle of estoppel. Undoubtedly a private owner of land who has the entire control and dominion over it as his own property, and who plats his land and makes sales of the different parts of it according to the plat, will be estopped to deny the right of the several purchasers to an easement in the roads and ways depicted on the plat, even though the plat may not be executed according to the statute. And it may be admitted that the several purchasers would be able to assert such right as against each other. But the rule is different where the plat is made by municipal officers whose powers in the premises are limited and defined by statute. No estoppel can ordinarily arise from the act of a municipal corporation or officer done in violation of or without authority of law. Every person is presumed to know the nature and extent of the powers of municipal officers, and therefore can not be deemed to have been deceived or misled by acts done without legal authority. In this case the purchasers of the land platted must be deemed to have known, at the time they purchased, that the attempts of the school trustees to dedicate portions of the school lands to the purposes of either public or private roads was without legal authority and therefore wholly ineffectual, and that those portions of the plat which marked out and depicted roads was nugatory and void.

The Appellate Court, in affirming the decree, waived any discussion of the propositions above considered, and placed its decision upon another ground, viz, that the complainant

had failed to show sufficient ground for equitable relief, even if it should be conceded that the road in controversy was laid out by competent authority. In this view also we are inclined to concur. The evidence clearly shows that the easement, if there is one, is of no practical value, either to the public or to the complainant, owing to the nature of the ground over which the alleged road runs, and the impracticability of making the road passable without the expenditure of money largely in excess of any benefit that could be derived from the use of the easement. As we said in *J. & C. R. R. Co.* v. *Healy,* 94 Ill. 416, "Equity will not do that which will be of no benefit to the party asking it, and only a hardship upon the party coerced, or, as the maxim contained in the old books is, the law does not require any one to do vain and useless things."

We are of the opinion that, under the pleadings and evidence, the decree was the only proper result, and the judgment of the Appellate Court affirming said decree will therefore be affirmed.       *Judgment affirmed.*