(No. 19539.—

JENNIE R. GERSTLEY *et al.* Appellants, *vs.* THE GLOBE WERNICKE COMPANY, Appellee.

*Opinion filed June 20, 1930—Rehearing denied October 8, 1930.*

Judah, Willard, Wolf & Reichmann, and Poppen-husen, Johnston, Thompson & Cole, (Floyd E. Thompson, and Arthur M. Cox, of counsel,) for appellants.

Cutting, Moore & Sidley, (Charles S. Cutting, of counsel,) for appellee.

Mr. Commissioner Edmunds reported this opinion:

The Globe Wernicke Company, a corporation, appellee, as lessee of the premises hereinafter described, constructed across the alley separating its buildings certain bridges in the form of a solid structure, which had the effect of cutting off light and air from the building of appellants on an adjoining lot. Appellants filed a bill in the superior court of Cook county to enjoin appellee and its lessors from maintaining these bridges. The master to whom the cause was referred recommended a decree compelling the removal of the structure complained of, with the right to replace it with a structure of the same kind and character as certain bridges formerly in the same place. The chancellor entered a decree sustaining exceptions to the master's report and dismissing the bill for want of equity. This appeal followed.

A plat showing the lots and alley here involved was made and acknowledged by an attorney in fact in 1847 and filed for record that same year. Succeeding conveyances were made with reference to this plat. The following diagram will indicate the location of the property in its relation

to the alleys and streets then platted and to the structure complained of by appellants:

Appellants are the owners of lot 1, upon which there is a five-story brick building. Lots 2, 3, 4, 14, 15 and 16 constitute the property of which appellee is lessee. On lots 2, 3 and 4 there is a six-story brick-and-stone building, and there is a six-story brick-and-stone building on lots 14, 15 and 16. The structure complained of connects the two buildings of appellee, crossing the alley indicated by the diagram. This alley is fourteen feet wide except at its juncture with the north and south alley indicated, where it widens to twenty-six feet. The north and south alley is eleven and one-half feet wide. The building on the west side of the north and south alley and opposite the fourteen-foot alley is four stories in height. The structure complained of lies

within the vertical planes previously occupied by open platform bridges connecting the third and fifth floors of the buildings occupied by appellee, authorized by city ordinance in 1882, and an enclosed bridge connecting the sixth floors. It runs from a point sixteen and one-half feet above the surface of the alley to a point three or four feet above the roof of appellee's six-story buildings and is surmounted by a water tank of six-thousand-gallon capacity. The three buildings directly involved were erected about 1882. The one on lot 1 is twenty feet wide and one hundred and eighty-nine feet long. It was erected with two windows on each of its five floors at the point where it abuts upon the fourteen-foot alley. The windows on the first floor are each twelve feet six inches high and four feet two inches wide. Those on the second, third, fourth and fifth floors are approximately eight feet in height and four and one-half feet in width. These are the only windows in appellants' building, with the exception of those in the front facing Monroe street and the ones facing the main alley in the rear, and, except for such front and rear windows, constitute the building's only available natural light and ventilation. Prior to the erection of the structure complained of there was no obstruction to the free passage of light and air into the building through the ten windows facing the fourteen-foot alley except the two open platform and the one enclosed bridge above mentioned, this old enclosed bridge interfering but slightly because it was above the roof of appellants' building. Appellants submitted testimony to show that, prior to the erection of the structure complained of, men employed in their building were able to work near the windows abutting upon the fourteen-foot alley without artificial light for a substantial portion of each day; that in the winter no artificial light was needed between noon and 2:00 P. M., and in the summer none was needed between 11:00 A. M. and 4:00 P. M.; that in the summer the direct rays of the sun shone into these windows between 1:00 P. M.

and 3:00 P. M., and that before the solid structure was erected there was a free circulation of air through such windows. These windows now open into a well, approximately fourteen feet square. The direct rays of the sun never enter them, and at no time of day is there sufficient daylight to enable the employees in the building to perform their duties without the aid of artificial light. The master found that the ventilation is interfered with and that the light in appellants' building was reduced from fifty to seventy-five per cent. This finding is amply warranted by the evidence.

The three old bridges above referred to were removed by appellee shortly after it took possession of the premises in 1920 and erection of the present structure was then commenced. At this time appellant Jennie Gerstley, owner of the life estate in lot 1, was not in Chicago. On June 9, 1920, before much work had been done, appellant Jesse Gerstley, one of the remaindermen, learning of appellee's activity from the manager of the tenant in possession of appellants' property, went to the scene and made demand upon those doing the work that activities be stopped. That same day he employed an attorney, who went with him to the City Hall to enter complaint. At the City Hall it was found that a permit to erect the structure had been obtained upon the representation that the passageway over which it was to be erected was private. Upon finding that the alley was shown by the plats in the city map department to be public, the city authorities ordered the work to be stopped. This action was reported by George L. Miller, the architect's superintendent, to Orsanus H. Bardwell, appellee's manager, who suggested to Miller that the work be proceeded with without a permit and that as much as possible be accomplished before further notice was given or protest made. Gerstley, who had made several other visits to the premises after operations were thus stopped and found nothing in progress, went there about a week after his first

visit and found fifteen or twenty men at work. He thereupon went to the City Hall again and visited the corporation counsel in person. The latter assured Gerstley that he would take care of the matter for him. The work was again stopped, and nothing further was done for about six weeks. During this time appellee took steps to obtain an ordinance from the city council granting permission to erect the structure. While this ordinance was pending work was again resumed, and Gerstley made many visits to the office of the corporation counsel to protest. In the course of these visits he was repeatedly assured by the acting first assistant corporation counsel that the delay did not prejudice appellants' rights. Gerstley also appeared before the committee of the city council and protested the passage of the ordinance. In November he went to Bardwell, who refused to accede to his protest but said that if Gerstley would delay taking any action he would present the matter to the president of appellee company and communicate with Gerstley later. Gerstley heard nothing further from Bardwell and shortly after became ill and was confined to his bed for several weeks. On April 11, 1921, the city council passed an ordinance authorizing appellee to construct and maintain the bridge "over and across the east and west fourteen-foot public alley," providing that such authorization should cease ten years from July 29, 1920, or might be revoked at any time prior thereto by the mayor, and that the ordinance should also be subject to amendment or repeal at any time without appellee's consent. In accordance with the further terms of the ordinance appellee filed a written acceptance thereof and agreed to pay the city of Chicago compensation in the sum of $500 per annum. In May, 1921, learning that this ordinance had been passed, appellants retained a solicitor and caused the bill in the present proceeding to be filed.

At the outset it is well to dispose of appellee's argument based upon the contention that because the plat here in-

volved was acknowledged by an attorney in fact there was only a common law dedication, leaving in the abutting owners title in fee to the alley. Appellee insists that under such a state of facts it can make any use of the alley which does not interfere with the enjoyment of the public easement; that the city, even without an enabling act, could allow any use of the alley not inconsistent with the public object of its creation, and that, consequently, erection of the structure complained of could not be, from a public standpoint at least, unlawful. The facts will not support such conclusion. The public is entitled to the uninterrupted, unimpeded and unobstructed use of every portion and part of public streets and alleys, not only that they may use the ground or foundation to travel upon, (which right is coextensive with every inch or foot of it,) but that they may enjoy the air, light and rainfall as well upon every portion of it. (*People* v. *Harris,* 203 Ill. 272; *People* v. *Corn Products Co.* 286 id. 226; *Hibbard, Spencer, Bartlett & Co.* v. *City of Chicago,* 173 id. 91; *Field* v. *Barling,* 149 id. 556; *Barnett* v. *Johnson,* 15 N. J. Eq. 481.) That the public right to light and air is obstructed by appellee's structure is too clear to require discussion. However, appellee argues that public benefit arises by way of prevention of congestion in the alley. The purpose of the structure is to provide communication between appellee's buildings for its employees and customers. As a matter of fact, customers use only one of the five bridges. The public, as such, has no access to them and no right to use them without appellee's consent. Even though the public were granted free access, the location of the structure, to say nothing of its nature, is such that no public benefit could arise therefrom. There is no showing that the surface of the alley is not fully able to carry, without congestion, all traffic available to move across the space in question. There is no showing that the five bridges promote in any way the public interest. The case of *People* v. *Field & Co.* 266 Ill. 609, involving an

ordinance which permitted a subway across Washington street in the city of Chicago, does not support appellee's position. The public rights in Washington street were not obstructed by the subway, and the court pointed out that use of the underground thoroughfare would, in fact, tend to benefit the public by relieving surface congestion. The structure erected by appellee encroaches upon the public right without conferring any public benefit.

From the standpoint of appellants in this case it makes no difference whether the dedication met the statutory requirements or not. It is a settled principle that where the owner of an estate has divided it into different parts, as lots and alleys or ways, and so arranged them that one part derives an advantage from another of a permanent, open and visible character, and has afterwards sold a part of the property, the purchaser takes the part sold with all the benefits and burdens which appear at the time of the sale to belong to it. It is not necessary that the easement claimed by the grantee be absolutely necessary for the enjoyment of the estate granted, but it is sufficient that it is highly convenient and beneficial thereto. The making and recording of a plat are not essential to the creation of the easement. (*Hankins* v. *Hendricks,* 247 Ill. 517; *Newell* v. *Sass,* 142 id. 104; *Cihak* v. *Klekr,* 117 id. 643; *Wattles* v. *Village of Mc-Henry,* 305 id. 189.) Even though a plat with reference to which sales are made be not executed in accordance with the statute, the original owner and author of the plat, and those claiming under him, will be estopped to deny the right of purchasers to the easements arising out of the roads and ways depicted. (*Seeger* v. *Mueller,* 133 Ill. 86; *Corning & Co.* v. *Woolner,* 206 id. 190.) When the original proprietor of the subdivision containing the property involved in the present case made the plat, dividing the land into blocks and lots, streets and alleys, and sold and conveyed the lots with reference to the plat, a right arose in favor of the purchasers of lot 1 of having the fourteen-foot alley kept for-

ever open,—not that it should be kept free from obstruction on the surface of the soil, alone, but that light and air should be allowed to pass unobstructed across the open space between its surface and the sky. *Field* v. *Barling, supra; Dill* v. *Board of Education,* 47 N. J. Eq. 421; *Townsend* v. *Epstein,* 93 Md. 537, 49 Atl. 629.

The structure sought to be erected in the *Field case, supra,* was in its nature, contemplated use and effect upon light and air similar to the one here involved, and it had been directly authorized by an ordinance of the city of Chicago. The reasons there set forth in awarding injunctive relief to the adjacent property owner are sound and must be held to govern here unless the record now before us presents distinguishing considerations. Appellee meets this situation by insisting that the ordinance in the present case is directly authorized by a statute duly adopted since the decision in the *Field case,* and that, apart from this, the circumstances here presented are not such as to warrant the equitable relief sought. The statute thus invoked provides: "The city council may also regulate the use of space over the streets, alleys and public places of the city, and upon payment of proper compensation, to be fixed by ordinance, may permit the use of the space more than twelve feet above the level thereof." (Cahill's Stat. 1929, chap. 24, par. 295.) Appellee argues that the municipal authorities needed no statute to allow them to use space above the streets for a strictly public use, and that in order to relieve the growing congestion of its streets and alleys it was proposed by this statute to give the municipal authorities the right, in the public interest, to give to private individuals certain valuable privileges which would not interfere in the slightest degree with the public easement, and for such privilege the private individual was to pay to the municipality a compensation. While appellee does not deny the private benefit conferred by the present ordinance upon itself, it asserts that such ordinance is in the public interest and is therefore

an absolute justification for the erection of the structure complained of. Granting that appellee correctly states the purpose and scope of the statute, the present ordinance is not one which falls within its purview. As we have already seen, the structure erected does not serve the public interest but rather infringes upon the public right, and no public interest is subserved by the ordinance purporting to authorize it.

Appellee insists, nevertheless, that *People* v. *City of Chicago,* 321 Ill. 466, and *Nielsen* v. *City of Chicago,* 330 id. 301, are authority for the proposition that the mere passage of the ordinance was sufficient and conclusive that the public benefit is subserved, whether, in fact, it is or not. Neither of those cases involved the statute sought to be invoked here. Each dealt with the act for the vacation of streets and alleys. The provisions of that statute have no present application. Moreover, examination of those cases discloses that the public interest was, in fact, subserved by the ordinances there brought into question.

In its exceptions to the master's report and by its argument in connection with the citation of *People* v. *Field & Co. supra,* appellee goes still farther and apparently takes the position that the ordinance is within the scope of the statutory authority even though the only purpose served is a private one. This position is not tenable. Since 1845 our statute has declared it to be a public nuisance "to obstruct or encroach upon public highways, private ways, streets, alleys, commons, landing places, and ways to burying places." (Cahill's Stat. 1929, chap. 38, par. 453.) Fundamentally, streets and alleys were created for public use. This court has consistently held that a municipality has no power or authority to grant the exclusive use or control of any part of the highway to any private person or for any private purpose. (*People* v. *Corn Products Co. supra; Chicago Cold Storage Co.* v. *People,* 224 Ill. 287; *People* v. *Atchison, Topeka and Santa Fe Railway Co.* 217 id. 594;

*Lowery* v. *City of Pekin,* 210 id. 575; *Pennsylvania Co.* v. *City of Chicago,* 181 id. 289; *Snyder* v. *City of Mt. Pulaski,* 176 id. 397; *Hibbard, Spencer, Bartlett & Co.* v. *City of Chicago, supra; Smith* v. *McDowell,* 148 Ill. 51; *Field* v. *Barling, supra; Ligare* v. *City of Chicago,* 139 Ill. 46; *Chicago Dock and Canal Co.* v. *Garrity,* 115 id. 155; *City of Quincy* v. *Jones,* 76 id. 231.) To authorize the exercise of any power by a city a statute must be shown expressly granting the power or making a grant in such terms as necessarily imply its existence. The absence of such grant excludes the power. Statutes granting powers to municipal corporations are strictly construed and a reasonable doubt of the existence of the power must be resolved against it. (*Chicago Motor Coach Co.* v. *City of Chicago,* 337 Ill. 200; *City of Chicago* v. *Rumpff,* 45 id. 90.) By statutory enactment and judicial decision there has been declared in this State a firm public policy against the use of public thoroughfares for strictly private purposes. In the absence of a clearly expressed grant of power we cannot asssume that the legislature intended to change this long-established policy and permit the turning over of public streets and alleys for purely private uses not in any manner related to the purposes for which they were created. While this properly disposes of the contention, it might be pointed out that to give to the statute the construction for which appellee finally argues would be to hold that the legislature may authorize the taking of private property for private use. A law could not be sanctioned which would permit the taking of private property for the sole purpose of applying such property to a purely private use. (*Sears* v. *City of Chicago,* 247 Ill. 204; *Litchfield and Madison Railway Co.* v. *Alton and Southern Railroad,* 305 id. 388; *Gaylord* v. *Sanitary District,* 204 id. 576; *Opinion of the Justices,* 208 Mass. 603, 94 N. E. 849; *Ackerman* v. *True,* 175 N. Y. 353.) An easement is property within the meaning of this principle. *Village of Bradley* v. *New York Central Railroad Co.*

296 Ill. 383; *Illinois Central Railroad Co.* v. *Highway Comrs.* 161 id. 247; *Field* v. *Barling, supra; People* v. *Harris, supra; Opinion of the Justices, supra; Barnett* v. *Johnson, supra.*

The master recognized the right of appellee to replace the structure complained of with bridges of the same kind and character as the original structures removed by it before commencing the erection of the present one. Appellee urges that a mandatory injunction is not proper in this case because appellants have a perfect remedy at law for damages, the measure of which is simply the difference, if any, between the obstruction caused by the old bridges and that caused by the new structure, citing *Lewis* v. *New York and Hudson River Railroad Co.* 162 N. Y. 202, 56 N. E. 540. This court has often upheld the relief afforded by mandatory injunction for the removal of obstructions to easements. (*Hunt* v. *Sain,* 181 Ill. 372; *Turney* v. *Shriver,* 269 id. 164; *Gulick* v. *Hamilton,* 287 id. 367; *Pradelt* v. *Lewis,* 297 id. 374; *O'Neill* v. *Wolf,* 338 id. 508.) In *Gulick* v. *Hamilton,* 293 Ill. 126, a mandatory injunction to remove an obstruction was sanctioned at the same time that the right was recognized to restore a previous lesser obstacle. In the New York case cited by appellee damages were assessed, under the code, in the equitable proceeding, and complainant was awarded an injunction to protect her in the event they were not paid. That case constitutes no reason for holding that a mandatory injunction is not a proper remedy here.

Appellee insists that the injury to appellants is slight by comparison with the expense to which appellee would be put to comply with a decree entered in accordance with the prayer of the bill, and that such relief should not, for that reason, be granted. It has been held that where the encroachment is slight, the cost of removing it great and the corresponding benefit to the adjoining owner small, or compensation and damages can be had, removal will not ordi-

narily be decreed. This rule is sometimes stated as applying only when the encroachment is slight and unintentional, but if the encroachment was intentional the absence of present damage to the owner of the land encroached on will not defeat his right to an injunction. (*Pradelt* v. *Lewis, supra.*) In the present case the encroachment is neither slight nor unintentional, and the principle contended for by appellee is therefore not applicable.

Appellee contends that because of *laches* appellants are without standing to maintain their present suit. *Laches* is such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. In an equitable proceeding it is only when by delay or neglect to assert a right the adverse party is lulled into doing that which he would not have done or into omitting to do that which he would have done in reference to the property had the right been properly asserted that the defense of *laches* can be considered. (*Neidhardt* v. *Frank*, 325 Ill. 596.) Clearly, appellee does not come within this rule. The evidence shows that appellants did nothing to lull appellee into doing that which it should not have done. On the contrary, the actions of appellee disclose a firm determination to carry the project to completion in spite of the obstacles interposed by appellants.

The decree of the superior court of Cook county is reversed and the cause is remanded, with directions to enter a decree requiring the removal of the structure complained of, but giving the appellee the right to replace the same with a structure of the same kind and character as the original structure removed by it.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*