## City of Chicago v. Rogers Park Water Company.

### Gen. No. 11,476.

1. WATER RATES—*ordinance fixing,* held *unreasonable.* An ordinance fixing certain maximum water rates, held under particular evidence to have been passed without a previous fair investigation and to be in its terms unreasonable, and therefore void.

Injunction proceeding. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed October 4, 1904.

WILLIAM D. BARGE, for appellant: EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel.

PARTRIDGE & PARTRIDGE, for appellee; NEWTON A. PARTRIDGE, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellee is a corporation organized under the laws of this state for the purpose of supplying water for public and private use within that part of the city of Chicago formerly known as the village of Rogers Park. November 12, 1888, the village of Rogers Park passed an ordinance entitled " An ordinance to provide for supply of water to the village of Rogers Park, Illinois, and its inhabitants, contracting with H. E. Keeler, his successors and assigns, for a supply of water for public use, and giving the said village

of Rogers Park, Illinois, an option to purchase the said works." The rights and privileges granted are expressed to be "for the period of thirty years from the time the ordinance takes effect."

The ordinance fixes the rates for water and contains the following provision : "At the expiration of ten years after the completion of the said works, and at the expiration of each succeeding five years thereafter, the said village shall have the right and privilege to purchase the said system of water works, provided they notify the said grantee or assigns of their intention so to do, at least six months before the expiration of said period or periods of years." The section provides a method of ascertaining the value by appraisement, and that the appraisers, "in fixing the value of said works shall take into consideration. the value of the franchise, the value of water rights and right of way, the revenue from the works, and all other facts and considerations legitimately connected with said works," etc.

H. E. Keeler accepted the ordinance, acted as promoter of appellee, and, when appellee became incorporated, assigned to it all his rights and privileges under the ordinance. Appellee constructed the works in accordance with the ordinance, and the same were accepted by the village of Rogers Park. The works were built and appellee began to pump water in August, 1899, and the works, since said time, have been in operation. In 1891 the General Assembly passed an act, in force July 1, 1891, providing as follows :

"That the corporate authorities of any city, town or village, now or hereafter incorporated under any general or special law of this state, in which any individual, company or corporation has been, or hereafter may be, authorized by such city, town or village to supply water to such city, town or village and the inhabitants thereof, be and are hereby empowered to prescribe by ordinance maximum rates and charges for the supply of water furnished by such individual, company or corporation to such city, town or village and the inhabitants thereof, such rates and charges to be just and reasonable. And in case the corporate authorities of any such city, town or village shall fix unjust and unreasonable rates and charges, the same may be re-

viewed and determined by the Circuit Court of the county in which such city, town or village may be." Hurd's Rev. Stat., 1903, p. 331, sec. 1.

In 1893 the territory of the village of Rogers Park was annexed to the city of Chicago. May 12, 1892, the appellant passed " An ordinance amending the rules and regulations prescribed by the department of public works governing the supply and use of water," and prescribing the rates to be charged for water.

September 29, 1902, appellant passed an ordinance containing the following section:

"Section 1. That the maximum rates and charges for the supply of water furnished by the Rogers Park Water Company to the inhabitants of that part of the city of Chicago in which said company has been or may be authorized to lay water mains and supply pipes, are hereby established and fixed, so as to be uniform and equal in every particular with those charged by the city of Chicago for water supplied from the city water works. If said Rogers Park Water Company shall charge, collect, or receive any greater rate for water supplied by it than is hereby prescribed, it shall be deemed guilty of a violation of this ordinance, and upon conviction thereof shall be fined not less than one hundred ($100) dollars."

October 31, 1902, appellee filed its petition setting forth the facts, as claimed by it, alleging that the rates and charges prescribed by appellant for water to be supplied by appellee are unjust and unreasonable, and praying that they may be so declared, etc. Appellant answered the petition, a replication was filed, and such proceedings were had that the court found and decreed as follows:

" The court further finds that the maximum rates and charges for the supply of water furnished by said petitioner to said city of Chicago and the inhabitants thereof, prescribed by the ordinance of the said city of Chicago in said petition complained of, will, at this time, reduce the income and revenue of the petitioner below what is just and reasonable compensation to the petitioner for the services

rendered, and that said rates are not just and reasonable. It is therefore ordered, adjudged and decreed, that the city of Chicago and the corporate authorities thereof, and its and their attorneys and employees, servants and agents, and each of them be, and they hereby are perpetually enjoined and restrained from enforcing the said ordinance, and that said petitioner recover its costs herein against said respondent to be taxed by the clerk of this court."

The evidence was produced and heard in open court. Appellant offered no evidence. Appellee's plant cost $207,-722.54. Its value at the time of the hearing, June, 1893, was estimated by John W. Alvord, witness for appellee, a hydraulic and sanitary engineer of large experience in regard to water works, to be $224,459.

When the appellee's plant was accepted by the village it was only required to lay and had laid only five miles of main pipe, but section 9 of the village ordinance provides for the extension of mains whenever called for by the village board, and appellee, in pursuance of such calls, made partly by the village and partly by the city, so extended its mains that it now has a fraction more than twenty-two miles of mains. At the end of 1889 appellee had 68 consumers; in 1890, 153; in 1891, 238; in 1892, 310; in 1893, 383; in 1894, 478; in 1895, 547; in 1896, 624; in 1897, 723; in 1898, 771; in 1899, 800; in 1900, 841; in 1901, 938; in 1902, 998. Appellee's total receipts for the following years were as follows: 1898, $22,067.68; 1899, $26,153.86; 1900, $27,241.80; 1901, $28,859.75; 1902, $30,111.89. The actual cost to appellee of pumping and distributing water in each of the following years was as follows: 1898, $14,156.87; 1899, $14,081.95; 1900, $14,683.50; 1901, $15,860.76; 1902, $17,-110.16. The actual cost to appellee of pumping and distributing each 1,000 gallons of water, in the following years, was as follows: 1898, eight cents; 1899, seven and one-half cents; 1900, seven and one-half cents; 1901, seven and one-quarter cents; 1902, seven and three-tenths cents. Deducting the actual cost of pumping and distributing the water in 1902 from the gross receipts in that year, leaves

$13,001.73 net. But this amount is sought to be further reduced by a provision in the ordinance of May 12, 1902. That ordinance provides: "In private dwellings, flats or apartment buildings, no charge shall be made for so-called sanitary fixtures, including bath tubs, water closets, urinals and wash hand basins." Appellee, by the village ordinance, had the right to charge for the sanitary fixtures mentioned, and derived revenue therefrom as follows:

> 1,002 water closets, $3 each per annum....$3,006
> 758 bathrooms, $3 each per annum........ 2,274
> 134 hand basins, $1.50 each per annum.... 201
>
> Total................................$5,481

Applying this reduction to appellee's net revenue for the year 1902, we have $13,001.73 less $5,481, or $7,520.73. The city ordinance contains peremptory provision for the remission of water rates in the case of charitable, religious and educational institutions, not conducted for profit. The village ordinance prescribing rates to be charged by appellee contains no such provision. The appellant, by the act of 1891, is "empowered to prescribe maximum rates and charges for the supply of water furnished by" appellee; but, clearly, appellant is not empowered to prescribe that appellee shall furnish water for nothing. The ordinance of May 12, 1902, is, in this respect, unjust and unreasonable. It appears from the evidence that the average number of feet of main pipe for each consumer in appellee's territory is 120, and in the city of Chicago, exclusive of such territory, thirty-three and one-half; also that the average investment of the city for each consumer of water supplied by it is $113, and that the average investment of appellee for each consumer of water supplied by it is $216. Without entering further into details, it is sufficient to say, the evidence shows that the conditions under which the parties, respectively, pump and distribute water are so different, and so much more favorable on the side of the city, that appellant can supply water at much less cost to itself than can appellee. From this it follows than an ordi-

nance fixing maximum rates for the city of Chicago, which would be just and reasonable as to said city, might be unjust and unreasonable if made applicable to such a corporation as appellee. The city ordinance of May 12, 1902, not only requires appellee to supply water free in the cases mentioned, but it would, if applied to appellee, materially decrease its revenue, by decreasing the rates which it may lawfully charge under the village ordinance. The city meter rate per gallon, up to 195 gallons per month, is ten cents, and the rate prescribed by the village ordinance is twenty cents. The revenue derived by appellee from water supplied by meter for one year from February 1, 1902, was $5,684, which revenue the application of the city rate would diminish one-half. It is hardly to be presumed that the village board of trustees would have authorized a rate 100 per cent more than it ought to have been. Other instances of material decrease of appellee's revenue, if the city rates are to be applied to it, are shown by the evidence. Alvord testified that a fair return on the capital invested by appellee would be a gross revenue of about $41,000.

It is averred in the petition, and admitted in the answer, that appellant passed the ordinance of September 29, 1902, applying the city rates to appellee, " without any investigation by or on behalf of its city council, with reference to the facts and circumstances surrounding the supply of water by petitioner." The answer, however, avers the fact to be that " this defendant and its city council were, upon the date last aforesaid, sufficiently advised in the premises, and that no investigation was then needed or required." As appellant offered no evidence, we are not apprised of what its information was, or the source of it. We think it clear, however, from the record before us, that, in order to intelligently fix maximum rates for the territory in question, a particular and painstaking investigation is not only necessary, but is required by fairness to appellee, and that if such investigation had been made, with due regard to the conditions under which appellee supplies water, the result would have been different. If the city desires to

supply water at city rates, to the inhabitants of the territory in question, which would be commendable, there is no legal obstacle to its so doing. It is averred in the petition and admitted in the answer, that, in February, 1899, the city council of the city of Chicago voted to purchase appellee's water works, under the option clause in the village ordinance, and gave notice to appellee of its intention so to do. Yet it has done nothing toward carrying out its expressed intention, so far as appears from the evidence. On the contrary it passed the ordinance of September 29, 1902, applying city maximum rates to appellee. These circumstances are not calculated to impress a court favorably. The evidence tends to prove that appellee has managed its water works economically. It declared no dividend until 1894, and then only three per cent, and paid no salaries until 1892. The only salaries which it now pays are, to its superintendent a salary of $1,000 per annum, although the evidence is that his services are reasonably worth $2,500, and to its treasurer $400 per annum. We think the decree fully sustained by the evidence.

Appellant's counsel contend that the court erred in making the injunction perpetual. The city ordinance fixing rates being unjust and unreasonable as applied to appellee, the perpetual injunction restraining its enforcement as against appellee is proper. By this the city cannot be prejudiced, as it has the power to pass a proper ordinance fixing the maximum rates.

The decree will be affirmed.

*Affirmed.*