## Rogers Park Water Company v. City of Chicago et al.

### Gen. No. 12,914.

1. WATER WORKS—*how franchise granting private right to maintain, construed.* Such a grant being in the nature of a grant of a governmental function, is to be strictly construed.

2. WATER WORKS—*when franchise granting right to construct and maintain, not exclusive.* The grant of a franchise to construct and maintain a water works system made by a village prior to its annexation to a city, does not, in the absence of express stipulation, exclude the annexing city from supplying water from its own mains within the limits formerly comprehended by such village.

36  APPELLATE COURTS OF ILLINOIS.

VOL. 131.]  Rogers Park Water Co. v. City of Chicago.

3. APPELLATE COURT—*to what extent bound to follow Supreme Court decisions.* The Appellate Court must follow the law as laid down by the Supreme Court of this state unless or until such court overrules the same, even if the Supreme Court of the United States holds contrary doctrines.

4. MUNICIPAL CORPORATION—*what powers cannot be abdicated.* A municipal corporation cannot absolutely alienate and abdicate its power to supply water to its citizens.

5. "EXCLUSIVE"—*as used in franchise ordinance, defined.* A franchise ordinance which grants an "exclusive" right does not thereby preclude the granting municipality from the doing of the thing authorized to be done.

6. FRANCHISE ORDINANCE—*how to be construed.* Grants of franchises and special privileges are always to be construed against the donee in favor of the public.

Bill in chancery. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in this court at the March term, 1906. Affirmed. Opinion filed January 7, 1907.

**Statement by the Court.** This is an appeal from a decree of the Circuit Court of Cook county entered January 22, 1906, dismissing for want of equity a bill and supplemental bill in chancery filed by the Rogers Park Water company, complainant below and appellant here, against the city of Chicago and the mayor and commissioner of public works thereof.

The original bill, filed June 12, 1905, prayed for a writ of injunction to restrain the defendants and their agents from erecting, maintaining or operating a system of water works in that portion of the city of Chicago which was formerly embraced within the village of Rogers Park, and from using the streets, alleys, public squares and other public places in said territory, and particularly Newgard avenue in said territory, for the purpose of laying pipes, mains and other conduits, and from erecting hydrants and other apparatus for furnishing, storing and conducting water to be supplied from the water works of the city of Chicago.

This prayer was based on allegations setting forth that before the annexation of the village of Rogers

Park to the city of Chicago in 1893, the board of trustees of the said village passed an ordinance, approved by the president of the board on November 12, 1888, the first section of which was as follows:

"Sec. 1.   That in consideration of the public benefit to be derived therefrom, the village of Rogers Park, Illinois, hereby grants the exclusive rights and privilege for a period of thirty years from the time that this ordinance takes effect unto H. E. Keeler, his successors and assigns, of erecting, maintaining and operating a system of water works in accordance with the terms and provisions of this ordinance, and the said village hereby grants the exclusive right to use the streets, alleys, public squares, and  other public places within the corporate limits of said village as it now exists or may hereafter be extended and within such other territory as may now or hereafter be under its jurisdiction, for the purpose of laying pipes, mains and other conduits, and erecting hydrants and other apparatus for furnishing, storing and conducting an adequate supply of good, wholesome water to the said village and to its inhabitants for public and private use and for making repairs and extensions to the said system from time to time during the period in which this ordinance shall be in force." '

That thereafter said H. E. Keeler assigned the said grant,. together with the rights and privileges given by said ordinance to the complainant; that the complainant thereupon proceeded to erect  a  system of water works in accordance with the terms of said ordinance, which system was duly accepted by said village; that said water works have been since continuously operated and furnish the territory included within the village of Rogers Park an adequate supply of good water for public and private use; that the ordinance provided that the grantee and his assigns should make extensions of the water mains of said system whenever called upon to do so by the village board of said village under certain limitations in said ordinance set forth; that said village from time to time required such extension until its annexation to Chicago in 1893;

that since that time the city council of Chicago has from time to time called for such extensions until the water mains are twenty-five miles in length; that more than half the total revenue of the complainant is derived from water rates paid by private consumers within said territory who are supplied with water by the complainant through such system of water works; that the rates to be charged by complainant to water consumers were fixed by the ordinance, and that no greater rates are charged by complainant, and that the rates charged are reasonable; that Newgard avenue lies within the city of Chicago and within that part of it formerly constituting said village of Rogers Park; that "by virtue of the exclusive character of the rights and privileges granted by said ordinance to the complainant to construct and maintain a system of water works in said village of Rogers Park, and to lay, maintain and operate water mains in the streets, alleys and other public places within the limits of said village, and by reason of the acceptance of said ordinance and the construction of said water works by the complainant, a contract arose by which said village of Rogers Park agreed and contracted with the complainant not to operate or maintain a system of water works within the said territory, and not to use said streets, alleys and other public places for the purpose of laying pipes, mains and other conduits, or for erecting hydrants and other apparatus for furnishing water for the use of the village and its inhabitants for public and private use in said territory or any part thereof; that said city of Chicago by virtue of the annexation of said village to said city has contracted and is bound in the same manner and to the same extent as the said village of Rogers Park, and is estopped from extending water pipes, mains, and other conduits, and from erecting hydrants and other apparatus for furnishing water for public or private use within the said territory; that on or about March 20, 1905, the city council of

Chicago passed an order requiring the complainant
to lay a water main in Newgard avenue and to set five
fire hydrants therein; that the complainant complied
with said order at a large expense, and that said
water main and hydrants have become a part of said
system of water works of the complainant, and are
supplied with water by it; that owing to the require-
ments set forth in the ordinance of November 12,
1888, granting the complainant its rights, and to the
fact that complainant's plant is small, it costs the
complainant more to supply water than it does the
city of Chicago through its water works; that there-
fore, if a line of water mains is laid in Newgard ave-
nue by the city of Chicago, so that the residences lo-
cated at that street are supplied with water by the
city of Chicago, it will greatly diminish and tend to
destroy the earning power and value of the complain-
ant's water system, and particularly of the water
main laid by the complainant in Newgard avenue by
the order of the city of Chicago; that for the city of
Chicago to so extend its water mains into the terri-
tory formerly embraced in the village of Rogers Park
would be a taking of complainant's property without
due process of law, and in violation of the express
contract of said city of Chicago; that nevertheless
the said city threatens so to extend its mains in vio-
lation of the rights of the complainant and of the
laws and constitutions of Illinois and of the United
States; that by the ordinance of November 12, 1888,
it is provided that at the expiration of ten years after
the completion of said water works and at the expira-
tion of each succeeding period of five years there-
after, said village of Rogers Park shall have the
right to purchase said system of water works upon
a valuation to be fixed by a board of three arbitrators
to determine the value of said system of water works,
in the manner in said ordinance provided; that about
the month of February, 1899, the city of Chicago
elected, by order of its city council, to purchase said

water works system of the complainant, but afterwards refused to proceed with said purchase; that the proceedings and threats on the part of said city of Chicago to duplicate the water mains of the complainant by a system of water works connected with the water works of the city of Chicago is intended to injure and destroy the value and diminish the purchase price of the property of the complainant which the city desires to acquire; that these actions of the city are unjust and tend to the irreparable hurt and injury of the complainant; that nevertheless the city persists in them, and has for years harassed the complainant with threats to destroy the value of its said property, or greatly to diminish the same, by either wholly or in part duplicating the said lines of water mains of the complainant with lines of water mains to be supplied with water from the water works of said city of Chicago; that the board of local improvements for said city has submitted to the mayor and aldermen an ordinance for a water supply pipe with five hydrants in Newgard avenue from Devon avenue to North Shore avenue; that the city council has passed the same, and has filed its petition in the County Court of Cook county for a special assessment for the cost of said improvement, and that the proceeding is pending, and the city is threatening to carry out said ordinance and lay said water main and construct said hydrants, and to supply the same with water from the water works of said city of Chicago.

The supplemental bill filed by leave of court November 27, 1905, sets up that the city of Chicago is about to extend the system of water works of said city to connect a building located on the northeast corner of Devon avenue and Clark street, in the territory formerly embraced within the village of Rogers Park, with the city water supply, upon the application of one Sivert Hollensen, who occupies said premises, although the complainant had already con-

Rogers Park Water Co. v. City of Chicago.

nected its system of water supply with said premises, and is ready and willing to supply them with adequate amount of good water for all purposes upon compliance with its known public and reasonable rules and regulations. This supplemental bill makes Hollensen an additional party defendant, and prays an injunction against him and the city and its mayor and commissioner of public works from proceeding to connect the water pipes and water system of said city of Chicago with said premises.

A general demurrer was filed by the city to the bill and supplemental bill, and on hearing they were dismissed for want of equity, as above stated.

From this decree the complainant, appealing to this court, has assigned as error the sustaining of the demurrer and the dismissal of the bills and the holding of the court below that the ordinance and franchise under which the water works and system of the complainant were erected, did not constitute a contract between the city of Chicago and the complainant preventing said city from extending its water pipes into the territory in said ordinance described; and that the city was not estopped from laying its water pipes in Newgard avenue by requiring the complainant to extend its water works and system into said Newgard avenue.

NEWTON A. PARTRIDGE, for appellant.

WILLIAM D. BARGE, for appellee; JAMES HAMILTON LEWIS, Corporation Counsel, of counsel.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

Three years ago the appellant was before this court as appellee in a cause in which the Circuit Court of Cook county had perpetually enjoined the city of Chicago from enforcing an ordinance fixing the maximum rates which the Rogers Park Water Company should charge the inhabitants of that part

of the city of Chicago for water furnished. The ordinance had been passed under authority of an Act of the General Assembly approved June 6, 1891, to enable cities to fix rates and charges for the supply of water furnished by any water corporation to the inhabitants of such cities. This court held that the city had power to pass a proper ordinance, but that the ordinance passed was admitted by the pleadings to have been passed without investigation, and was unreasonable and unfair, and consequently invalid. It affirmed the action of the Circuit Court in enjoining its enforcement. Chicago v. Rogers Park Water Co., 116 Ill. App. 200. This decision of the Appellate Court was afterwards affirmed by the Supreme Court, Chicago v. Rogers Park Water Co., 214 Ill. 212, on substantially the same grounds on which the decision was placed by this court.

Before the aforesaid suit for an injunction was brought, an inhabitant of the territory in question had secured from the Circuit Court of Cook county a peremptory writ of *mandamus* on the Rogers Park Water Company to furnish him water at rates in accordance with the ordinance of the city. Against the contention of the company that the schedule rates fixed by the ordinance of the village of Rogers Park of November 12, 1888, constituted a binding contract in favor of the company, allowing it for thirty years to charge its customers within the given territory those rates, the Supreme Court of Illinois (Rogers Park Water Company v. Fergus, 178 Ill. 571) and afterward the Supreme Court of the United States (Rogers Park Water Company v. Fergus, 180 U. S. 624), affirmed the judgment awarding the writ. The reasonableness of the city ordinance was not passed on in this case, but the contractual right of the water company to maintain the original village ordinance rates was denied. The company is now seeking to enjoin the city of Chicago from extending its own water plant into the territory involved in

these former suits, and having been denied such injunction by the court below, has appealed to this court.

In the opinion in Chicago v. Rogers Park Water Company, 116 Ill. App. 200, this court, speaking through Mr. Justice Adams, said: "If the city desires to supply water at city rates to the inhabitants of the territory in question, which would be commendable, there is no legal obstacle to its so doing."

It is true that the question was not in that case directly presented whether the city could legally extend its own system into the territory involved, and the remark was incidental, but we see no sufficient reason now to modify it or to limit its reference to a possible purchase of the appellant's plant.

The appellant claims an express or implied contract by the village of Rogers Park, that it would not itself undertake to furnish water to its inhabitants for the space of thirty years, and that this contract is binding on the city of Chicago by virtue of the annexation.  The case seems to us to be governed by the very general principle thus stated in the opinion of the Supreme Court of the United States in Rogers Park Water Co. v. Fergus (*supra*): "A strict construction must be exercised.  The contract claimed concerned governmental functions, and such functions cannot be held to have been stipulated away by doubtful or ambiguous provisions," and by the more special doctrine suggested as applicable to Illinois in the opinion of the same court in Freeport Water Company v. Freeport City, 180 U. S. 587, that if it be the declared policy of a State that the power of alienation of a governmental function does not exist, a subsequently asserted contract will be controlled by such policy.

The minority of the Supreme Court of the United States, consisting of four judges, held in the case of the Rogers Park Water Co. v. Fergus, and in the similar cases decided at the same time, of Freeport

Water Company v. Freeport City, *supra,* and Danville Water Company v. Danville City, 180 U. S. 619, that the theory of the Supreme Court of Illinois in relation to the subject-matter of a water supply was untenable. In their dissenting opinion in the Freeport cases, they attributed to the Supreme Court of Illinois the doctrine that fixing of rates for a water supply for a municipality was a governmental function or public attribute, incapable of being alienated or restrained by the obligations of a contract, even although express authority to do so was conferred by the legislature on the municipality. This proposition for themselves they distinctly repudiated. They asserted that the contrary was the doctrine of the Supreme Court of the United States, and that as the question before the Court was concerning an alleged impairment of a contract by subsequent State legislation, it was bound to form an independent judgment as to the existence of the contract and its terms, without reference to the construction placed by the Supreme Court of the State on its laws.

The majority opinion in the Freeport case also declared that it could not concur in the view of the Supreme Court of Illinois (if such were its view) that municipal corporations could not be invested with the power to bind themselves by an irrevocable contract not to regulate water rates. But the opinion proceeds, "We do not mean to say that if it was the declared policy of the State that the power of alienation of a governmental function did not exist, a subsequently asserted contract would not be controlled by such policy. In Stevenson v. School Directors, 87 Ill. 225, 255, and in Davis v. School Directors, 92 Ill. 293, it was held that a school board could not make a contract for the employment of teachers to extend beyond the current year, and this was put upon the ground of the inability of one board to control the exercise of the functions of its successor. In East St. Louis v. East St. Louis Gas Light & Coke

Company, 98 Ill. 415, decided in May, 1881, the doctrine of those cases was not adopted as applicable to a contract for gas rates, nor was it rejected. One Justice asserted it with great emphasis, quoting those cases. The court, however, left it disputable, placing the decision on other grounds. There was at least admonition in those cases to persons entering into contracts with municipalities. If there was anything more, we need not decide, as there are other grounds for judgment.''

In the case of the Rogers Park Water Company v. Fergus, as in the Freeport case, the Supreme Court of the United States found it unnecessary to pass on the right of the municipality to bind its hands for thirty years in the regulation of water rates, because it could hold that it had not attempted to do so. But its language in the Fergus case, which we first quoted, to the effect that the contract claimed concerned governmental functions, and that such functions could not be held to have been stipulated away by doubtful or ambiguous provisions, is significant. It is made doubly so by the implication plainly made, that if this ground for the decision had not been found, the acts of the legislature would not have been found sufficient to establish the power in the village of Rogers Park to grant to the Rogers Park Water Company the right to collect for thirty years the rates prescribed by the ordinance of November, 1888.

The question was not the same as in the case at bar, it is true, but the policy of the State of Illinois, which is plainly recognized, and the doctrines which by both the majority and minority of the court are imputed to the Supreme Court of Illinois, apply certainly with as much force to an asserted contract on the part of a municipality not to furnish a public service of water for thirty years, as they do to an asserted contract on its part not to diminish the rates established by the original ordinance. If the latter

would be the abdication of a public and governmental function, *a fortiori* so would the former.

Therefore, as the Supreme Court of the United States has said, no doubtful or ambiguous provisions can be held to have expressed it. But more than that, the Supreme Court of Illinois, by whose decisions we are bound in a matter involving the construction of the statutes and constitution and policy of the State, holds, if the expression and implications of the Supreme Court of the United States to which we have called attention are accurate, to doctrine more unfavorable to the contention of the appellant than does the Federal tribunal.

Despite the strong dissent by the minority of the court in the Freeport case from the proposition that the Illinois decisions should control the determination of the cause, the opinion of the court, beyond question, recognizes and expresses a disposition to agree with the State court.

Appellant has pressed strongly on our attention as decisive of this appeal Vicksburg v. Vicksburg Water Works Company, 202 U. S. 453, and if we leave out the peculiar factor in the case at bar arising from the subsequent annexation of the originally contracting municipality with a larger and neighboring one having its own system of water works, it must be conceded that as applied to a case arising in Mississippi, the opinion of the court bears out the contention of the appellant, but the considerations which we have shown are recognized by the entire court in the Freeport case concerning the policy of Illinois and the decisions of its highest tribunal, make it probable, to our mind, that if the Vicksburg case had come from Illinois, the language of Judge Harlan in his dissenting opinion would have met the concurrence of the majority, and that they would have held for Illinois what he desired to hold even for Mississippi: First, that the municipality in question had no authority to give an ex-

clusive right to any person or corporation to maintain a system of water works for the benefit of that city and its people; and, second, that even if this be not the law, it ought not to be held from the terms of the present ordinance that the municipality had precluded itself from establishing and maintaining at its own expense a system of water works for the benefit of its people.

We agree with his conclusion that ''the contrary cannot be maintained unless we hold that a municipal corporation may by mere implication bargain away its duty to protect the public health and the public safety as they are involved in supplying the people with sufficient water,'' and that as ''nothing can be more important or vital to any people than that they should be supplied with pure, wholesome water, it should not be held that a municipality by mere implication can so tie its hands that it cannot perform the duty which it owes in that regard to the people.''

We moreover think the Supreme Court of the United States, if it should so decide a cause coming from Illinois, and involving the questions at issue here, would be following the natural and logical trend of its opinions in such cases earlier, it is true, than the Vicksburg case, but of equal authority as to the principles defined as Hamilton Gas Co. v. Hamilton, 146 U. S. 258; Bienville Water Supply Co. v. Mobile, 175 U. S. 109; Bienville Water Supply Co. v. Mobile, 186 U. S. 212, 223; Skaneateles Water Works Co. v. Skaneateles, 184 U. S. 354; Helena Water Works Co. v. Helena, 195 U. S. 383, and especially Knoxville Water Co. v. Knoxville, 200 U. S. 22, in which Mr. Justice Harlan voiced the opinion of the court, in much the same terms that he employed in his dissenting opinion in the later Vicksburg case.

But after all, the actual question involved is not what the Supreme Court of the United States has decided, or might in the future decide, on the ques-

tion involved here, but what the Supreme Court of this State has decided as to it, and what the principles and doctrines it has laid down which should govern us in our disposition of it. For we must follow the Supreme Court of Illinois in our decisions on the construction of the laws of Illinois, unless or until they overrule the same, even if the Supreme Court of the United States holds contrary doctrine. This is most emphatically declared, for example, in the separate opinion of Judge Walker in E. St. Louis v. E. St. Louis Gaslight Co., 98 Ill. 415.

We think that both the majority and minority of the Supreme Court of the United States, as that court has heretofore divided on these water company cases, have in effect imputed to the Supreme Court of Illinois the doctrine that such governmental functions as relate to the municipal supply of water cannot be alienated or abdicated. We think too, that they were right in their view of that which was involved in the holdings of our Court of last resort..

In the opinion in the City of Danville v. Danville Water Co., in the Supreme Court of Illinois, 178 Ill. 299, which decided that the city of Danville had no power to make a contract to pay fixed and unalterable water rates for thirty years to the Danville Company, but might by ordinance from time to time regulate those rates. the court uses this language:

"It is well settled that municipal bodies can only exercise such powers as are conferred upon them by their charters, and all persons dealing with them must see that the body has power to perform the proposed act." To this is cited Law v. The People, 87 Ill. 385, and then the opinion proceeds to quote with approbation this language from Beach in his work on Public Corporations (sec. 554), speaking with reference to a contract between a water company and a city for the furnishing of water by the former to the latter: "The city could bind itself by such contracts only as it was authorized by statute to make.

It has no power to grant *exclusive* privileges to put mains, pipes and hydrants in its streets, nor can it lawfully, by contract, denying to itself the right to exercise the legislative powers vested in its council;" and also this language from the Court of Appeals in New York & Syracuse Water Company v. City of Syracuse, 116 N. Y. 167: "The municipal corporation as such could bind itself by such contract only as it was authorized by statute to make. It could not grant exclusive privileges especially to put mains, pipes and hydrants in its streets, nor could it lawfully by contract deny to itself the right to exercise the legislative powers vested in its common council. * * * In dealing with municipal corporations parties are chargeable with knowledge of their powers as they are furnished only by statute." The opinion further on contains this language: "No question is made by either party to this litigation as to the validity of this act, so far as it gave the right to contract for thirty years. Therefore we pass no opinion upon this question. * * * The business of furnishing water to a city and its inhabitants by means of water works which require the use of the public streets of the city for the laying of water pipes, is a business public in its nature and upon which a public interest is impressed. * * * If, however, it be doubtful whether the language of the Act of April 9, 1872, does or does not confer the power upon cities to contract for a supply of water at a fixed rate for the whole period of thirty years, such doubt must be resolved in favor of the public. In Seeger v. Mueller, 133 Ill. 86, we said, p. 94: 'Any ambiguity or doubt arising out of the terms used by the legislature in conferring their powers must be resolved in favor of the public. * * * No estoppel can ordinarily arise from the act of a municipal corporation or officer done in violation of or without authority of law. Every person is presumed to know the nature and extent of the powers of municipal officers,

and therefore cannot be deemed to have been deceived or misled by acts done without legal authority.' * * * A legislative body cannot part with its powers by any proceeding so as not to be able to continue the exercise of such powers. It has no authority even by contract to control and embarrass its legislative powers and duties. What might be proper for a city this year might not be proper the next year. * * * No contract is reasonable by which the governing authority abdicates any of its legislative powers and precludes itself from meeting in a proper way emergencies or occasions that may arise."

While it is true that the question in the case on which the learned judge was speaking was not the right of the city council to estop the municipality from furnishing water in after years from its own plant, but its right to estop itself from regulating the rates which the private company could charge, the reasoning applies with no greater force to the one case than to the other. We can have little doubt that had the question been involved, as in this case, whether a city authorized by its charter itself to erect, construct and maintain a system of water works in its streets, and also authorized in its discretion "to contract with any person or incorporated company for a supply of water for public use for a period not exceeding thirty years," could by the action of its governing authority under the latter power estop itself and all succeeding councils and governing authority from taking advantage of the former power, for the period of thirty years, the decision on precisely the same reasoning would have been adverse to such power of estoppel.

This also is, in our opinion, implied in the language of all the opinions in the case of East St. Louis v. E. St. Louis Gas Light Co., *supra,* and is certainly expressly laid down with great force and elaboration by Judge Walker's separate opinion in that case.

Whatever contract was made by the village of

Rogers Park with the Rogers Park Water Company was made by the ordinance of November 12, 1888. That ordinance was passed under the authority of an Act of the Legislature approved April 9, 1872, and amended June 26, 1885, and an Act approved April 10, 1872. In the first of these Acts authority is given to cities, incorporated towns and villages to contract with an individual or incorporated company which has constructed water works "for a supply of water for public use for a period not exceeding thirty years;" and, by the second, the city council or board of trustees is given the power "to authorize any person or private corporation to construct and maintain the same" (*i. e.*, a water supply and water works), "at such rates as may be fixed by ordinance, and for a period not to exceed thirty years."

There is no attempt here made to give legislative authority to grant exclusive privileges or make exclusive contracts of any sort. It is to be doubted whether even if such an attempt had been made, it would have been effective to give the power. It might well have been claimed to be unconstitutional under section 14 of article 2 of the constitution of Illinois. But as no such attempt was made, it is plain that the ordinance in attempting to grant an exclusive right is liable to the animadversion which the Supreme Court has since the constitution of 1870 passed on such claims or attempted grants.

In Chicago Telephone Company v. N. W. Telephone Company, 199 Ill. 324, for example, the Supreme Court said, p. 348: "The city of Aurora had no power under the laws of the State to grant the exclusive use of its streets to one company alone for telephone purposes. * * * A city council has no power under the City and Village Act of this State to grant an exclusive franchise to a private corporation to use its streets for the purpose of conducting and maintaining a telephone system in the city. Such an exclusive grant cannot prevent a city from

granting to another corporation the privilege to oc-
cupy its streets for the same purpose.''    And then
the court cites as authority and with approval the
case of Clarksburg Electric Light Company v. City
of Clarksburg, 47 W. Va. 739, where in an elaborate
opinion the Supreme Court of Appeals of West Vir-
ginia declares that the proposition is ''sustained by
authorities in all quarters that to authorize such ex-
clusive franchise the statute must admit of no other
reasonable construction.''    Certainly that cannot be
said of the statutes of 1872, in question here.

We can see little force in the argument that even
if the attempt to grant an exclusive privilege is void
and invalid as far as it affects the power of the
municipality to make another licensee or grantee of
the same rights, it is nevertheless effective and valid
to prevent its exercising those rights itself.    The
whole contention of the water company practically
rests on the use of the word ''exclusive'' in two places
in section 1 of the ordinance of November 12, 1888.
''The village grants the *exclusive* right and privilege
for the period of thirty years, etc., for erecting, main-
taining and operating a system of water works,'' and
''grants the exclusive right of using the streets, al-
leys and public squares and all other public places
within the limits of the village for the purpose of lay-
ing  pipes,  mains  and  other  conduits,  erecting
hydrants,'' etc., etc.

If this ''exclusive'' privilege and right could not
be legally granted by the municipality, the grant and
the vested rights are simply those which would exist
without the use of the word ''exclusive'' in the ordi-
nance, as the court held was the case in the Clarks-
burg Electric Light Co. v. Clarksburg, *supra*.    But
without that word in the ordinance plainly there
would be no basis for the appellant's contention.
Even in the opinion of the court in Vicksburg Water
Co. case, insisted on by the appellant, it is said:
''Unless the city has excluded itself in plain and ex-

plicit terms from competition with the Water Works Company during the period of this contract, it cannot be held to have done so by mere implication." See also City of Joplin v. Southwest Missouri Light Co., 191 U. S. 150.

But even with the word "exclusive" in the ordinance given full force and effect as a legal and valid provision, we think still that it would be by "mere implication" that it could be held that the village of Rogers Park by its use had shut out itself and the city of Chicago, by annexation its successor in public duties to the inhabitants of its territory, from the exercise of one of the most necessary and ordinary of municipal functions. To our mind the granting of an "exclusive" right and privilege to one person means that the grantor will not grant the same right and privilege to another person—not that he binds his own hands otherwise.

The kind of construction that would make the ordinance of 1882 effective to sustain the water company's present claim is not the kind that can be properly used on governmental grants. The government, possessing powers that affect the public interests and having entered into a contract involving said interests, is not by means of implications or presumptions to be disarmed of powers necessary to accomplish the objects of its existence. Any ambiguity in the terms of such a contract must operate against the adventurers and in favor of the public, and the contractors can claim nothing that is not clearly given by the act; it can never be assumed that the government intended to diminish its power of accomplishing the end for which it was created. Those who insist that the government has surrendered any of its powers or agreed that they may be diminished, must find clear warrant for such a contention before it can be heeded. Charles River Bridge Co. v. Warren Bridge, 11 Peters, 420.

Grants of franchises and special privileges are al-

ways to be construed most strongly against the donee and in favor of the public.    Turnpike Co. v. Illinois, 96 U. S. 63.

The universal rule in doubtful cases is that the construction shall be against the grantee and in favor of the government.    Oregon Railway Co. v. Oregonian Ry. Co., 130 U. S. 1.

The doctrine is firmly established that only that which is granted in clear and special terms passes by a grant of property, franchises or privileges in which the government or the public has an interest.    Statutory grants of that character are to be construed strictly in favor of the public, and whatever is not unequivocally granted is withheld.    Nothing passes by mere implication.    Coosaw Mining Co. v. South Carolina, 144 U. S. 550.

All grants by the public such as are given by cities or villages in their ordinances, are to be construed most strongly against the grantee.    Blocki v. People, 220 Ill. 444.

The argument that the city is equitably estopped from extending its mains into the territory involved because of its conduct in heretofore requiring the expenditure of money by the appellant under the ordinance of 1888, and by its negotiations for a purchase of appellant's plant under the ordinance, at an appraised value, is an extension of the proposition that an alienation of public rights and duties may be inferred and implied.    If what we have said concerning the invalidity of the appellant's claim under its alleged contract is sound, it is *a fortiori* the law that the matters alluded to do not effect an equitable estoppel.

Thus far we have considered the cause as though the element of a subsequent annexation of the village of Rogers Park to the city of Chicago did not enter into the question at issue, and we do not think that it is necessary to take account of that element to arrive at a proper conclusion.    But certainly the facts that

Rogers Park Water Co. v. City of Chicago.

the life of the municipal corporation, which is alleged to have made the exclusive and estopping contract has ceased, that the territory involved has become a part of the city of Chicago, that in consequence the taxing power of the city of Chicago has extended itself over the inhabitants thereof, and that their property must be taxed equally with that of all other citizens of Chicago to make up a deficit in the water revenue of the city—if there should be one— does not detract from the force of the argument against the contention of the appellant. Is it not possible, on the contrary, that the citizens of the territory formerly composing the village of Rogers Park, and now a part of the city of Chicago, have a legal, equitable and moral right under these circumstances to demand that the city of Chicago should give them their water supply on the same terms it gives such supply to other citizens?

Whether a grant by a town or village for the use of streets, not purporting to be exclusive, for a term of years, would, by virtue of such expressed term, be effective at all after annexation of the town or village to Chicago, was left an open question by the Supreme Court in The People v. Chicago Telephone Co., 220 Ill. 238, p. 248, the court saying that there might be ground in such a case for so claiming, but could be none when the grants were not for a definite term.

But it is not necessary to go farther in the case at bar in this view, than to call attention to the light which the possibility of future annexation (which, though it actually took place under the law of 1889, was possible under a preceding Act in existence in 1888) throws on the intention of the village council in the use in the ordinance of the word "exclusive." It does not seem probable to us that they meant by any such expression not only to forbid themselves to give a third party a similar right and to estop themselves from maintaining their own water supply, but

also to make it possible for the action of a subsequent council, ratified by a majority of the voters, to impose on every inhabitant of the territory all the burdens, but not all the rights or advantages, of a citizen of Chicago.

The decree of the Circuit Court is affirmed.

*Affirmed.*