EDWARD C. FINCH *et al.* Appellees, *vs.* EMMA B. THEISS, Appellant.

*Opinion filed February 17, 1915.*

1. CONTRACTS—*the rule that courts will look to interpretation by parties applies in case of ambiguity, only.* The rule that courts will look to the interpretation placed upon a written contract by the parties thereto only applies where, from the ambiguity of the words used, a doubt arises as to proper meaning of the contract.

2. PARTY WALLS—*when party is not estopped to enforce contract according to its terms.* Where a party-wall agreement clearly requires a solid wall throughout its entire length and height, the mere fact that one of the parties to the contract makes no objection, at the time, to the acts of the other party in leaving openings and otherwise violating the contract when adding to the height of the wall as originally constructed, does not estop the first party from enforcing the contract according to its terms when she desires to make use of the additional wall for her building.

3. SAME—*what does not justify breach of party-wall contract.* Where a party-wall agreement gives one party an easement of passage over the other's land, the act of the latter in constructing a stairway which is an obstruction to the easement of passage can not be justified upon the ground that the stairway was intended as a fire-escape, which the law required.

267 — 5

APPEAL from the Circuit Court of Kane county; the Hon. C. F. IRWIN, Judge, presiding.

FRANK G. PLAIN, and ALBERT J. KELLEY, (GEORGE R. WARNER, of counsel,) for appellant.

J. C. MURPHY, and E. L. LYON, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellees, Edward C. Finch and William H. McCul- louch, a co-partnership, as complainants, filed their bill in the circuit court of Kane county against Emma B. Theiss, Otto J. Theiss and Jacob Salfisburg, defendants, for an in- junction restraining the said defendants, or either of them, from closing certain openings in a party wall between lots owned by the respective parties.

This litigation grew out of the following state of facts: Complainants were the owners of a vacant lot at the north- east corner of Benton and LaSalle streets, in the city of Aurora, Illinois. Defendant Emma B. Theiss (who was then Emma B. Brunemeyer but will hereafter be referred to as Mrs. Theiss) owned a lot adjoining complainants' lot on the north. That part of her lot adjoining complainants' lot was also vacant at the time the agreement hereafter re- ferred to was entered into. There was a private alley from Benton street north over the rear of complainants' lot which afforded access from Benton street to Mrs. Theiss' lot, the north part of which she had improved and was using for an automobile garage. She desired to put up a one-story building on that part of her lot adjoining complainants' lot, and on November 20, 1909, she and complainants entered into a party-wall agreement, by which Mrs. Theiss agreed to construct the wall at her own expense, one-half on each side of the lot line, in consideration of complainants allow- ing her the use of the alley over the rear of their lot for access to her building by teams and automobiles. When

completed one-half of the wall was to be the property of
the complainants and one-half the property of Mrs. Theiss.
The agreement further provided that each of the owners
who might at any future time desire to build additional
stories should have the right to continue the party wall as
high as desired; each party to pay one-half the cost of the
proportion he might use at any time.    Pursuant to the
agreement Mrs. Theiss constructed the wall proposed on
that part of her lot adjoining complainants, by the erec-
tion of a one-story building.    The party wall built by her
was solid throughout, with no openings, and was eighteen
inches thick, one-half on the property of each of the par-
ties.    Shortly afterwards complainants constructed a two-
story building on their lot, using the party wall built by
Mrs. Theiss for the first story and building on it a second-
story party wall twelve inches thick.    Instead of placing the
center of this second-story party wall on the line it was
built with the north side flush with the wall built by Mrs.
Theiss, so that three inches more of the wall was on Mrs.
Theiss' side of the line than was on the complainants' side.
Complainants also constructed seven windows in the second-
story wall overlooking the roof of Mrs. Theiss' building.
Later, complainants erected a third story to their building
by continuing the party wall on up, of the same thickness as
the second-story party wall.    In the rear of complainants'
building they constructed a stairway of iron and wood,
running from the third story to the ground, and which
projected out into the alley about three and one-half feet.
They also built a coal-bin at the foot of the stairway, about
five feet high, six feet long and three and one-half feet
wide.    These structures interfered with the use of the al-
ley for access by Mrs. Theiss to her building.    Complain-
ants constructed two windows in the third-story party wall.
In the latter part of 1912 Mrs. Theiss erected a second and
third story on her building.    In doing so she left an air-
shaft or opening next to the party wall, extending from the

first story up through the roof of the top story, for the purposes of light and ventilation. This air-shaft is about twelve feet square. While Mrs. Theiss was having her second and third stories built, the complainants closed six of the seven windows they had made in the second-story wall but left one which opened into the air-shaft. They constructed two more windows in the second story, opening into the air-shaft, and also two windows opening into the air-shaft in the third story. These windows were constructed with stone sills, extending into the air-shaft about two inches. Iron shutters for the windows on the third floor were hung upon Mrs. Theiss' side of the wall, the hinges and shutters projecting out into the air-shaft, the latter about eighteen inches. Mrs. Theiss occupied the upper stories of her building, upon their completion, as a residence. The second story of the complainants' building was used as a factory for manufacturing wrappers and the third floor as a foundry. Mrs. Theiss complained of the noise and bad language coming from the complainants' building through the openings made for the windows in the party wall, and on the 7th of March, 1913, made a demand, in writing, upon complainants to close said windows, remove the window sills, shutters and hinges and the stairway and obstructions in the alley at the rear of the building. Thereupon complainants filed their bill in this case to enjoin the defendant from closing up the windows opening from the building into the air-shaft, and from doing any act to prevent the free use by complainants of the windows for the purpose of light and ventilation.

The original bill alleged that the windows opening into the air-shaft were constructed by complainants pursuant to a verbal agreement between them and Mrs. Theiss. Mrs. Theiss answered the bill and the other defendants were defaulted. In her answer Mrs. Theiss denies that there was ever any agreement that the complainants should construct windows in the party wall, and denies that any consider-

ation ever moved to her from complainants for the privilege of constructing said windows. Mrs. Theiss also filed a cross-bill, in which she alleged that the wall contemplated by the party-wall agreement was to be a solid wall throughout its length and height; that without her consent, and contrary to her wishes, complainants had constructed windows in it and had encroached upon her property, by the window sills, shutters, and the hinges upon which the shutters were hung, extending out over her property; also that the party wall for the second and third stories was so constructed by complainants that she was deprived of the use of three inches of her property. The cross-bill further alleged that the stairway and other obstructions at the rear of complainants' property were in violation of her right to the use of said alley in accordance with the terms of the agreement between the parties. The cross-bill prayed that the original complainants be required to close up the windows and restore the party wall to a solid wall, remove the window sills, hinges and shutters, also the stairway in the alley, and to pay cross-complainant damages for the use of three inches of her second and third stories. Answer and replication were filed to the cross-bill and the cause was heard before the chancellor on both the original and cross-bills. There was no evidence to support the allegations of the original bill that Mrs. Theiss had made a verbal agreement with complainants by which they were authorized to place windows in the party wall, and complainants filed an amended bill, which was substantially like the original bill except that it did not allege the windows were constructed by virtue of any agreement, but alleged the windows were placed in the wall with the knowledge, approval, acquiescence and consent of Mrs. Theiss and under circumstances which now estop her from insisting that they be closed.

The decree found that the windows were constructed with the knowledge, consent and acquiescence of Mrs. Theiss and she was estopped from objecting to their re-

maining in the wall. She was perpetually enjoined from closing the window openings, also from closing the air-shaft on her side of the wall, and from doing any act which will interfere with the free use, for all purposes, of the windows opening into the air-shaft. The decree ordered that the sills at the bottom of the windows opening into the air-shaft remain as they now are, but that complainants remove the stairway at the rear of their building and the iron shutters and hinges to the windows opening into the air-shaft, and that complainants pay Mrs. Theiss $75 as the amount equitably due her for placing the second and third stories of the party wall three inches further upon her property than was proper. This appeal is prosecuted by Mrs. Theiss.

By her assignment of errors appellant questions the correctness of that part of the decree enjoining the closing up of the windows and the removal of the projecting sills, and the closing of the air-shaft on her property if she sees fit to close it. Complainants have by cross-errors questioned the correctness of the decree requiring the removal of the stairway, the iron shutters and hinges upon the windows opening into the air-shaft, and also the requirement that complainants pay Mrs. Theiss $75 on account of the second and third stories party wall having been built three inches farther over on Mrs. Theiss' property than it should have been.

Appellees seek to sustain the decree upon two theories: (1) That the parties by their acts interpreted the contract as authorizing the construction of windows in the party wall; and (2) that appellant is estopped now from objecting to the windows and from closing or requiring them to be closed. In our view neither of these positions is tenable. The rule that courts will look to the interpretation placed upon a written contract by the parties to it in construing the instrument, only applies where from the ambiguity of words used a doubt arises as to the proper meaning of the writing. In such cases courts will look to the acts of

the parties for aid in construction. (*Burgess* v. *Badger,* 124 Ill. 288; *People* v. *Murphy,* 119 id. 159; *Railroad Co.* v. *Trimble,* 10 Wall. 367.) There is no ambiguity in the party-wall agreement before us. It required a solid wall throughout its entire length and height. *Kuh* v. *O'Reilly,* 261 Ill. 437; *Springer* v. *Darlington,* 207 id. 238.

We are furthermore of opinion that there was an entire failure of evidence to show any claim on the part of appellees, or any recognition on the part of appellant, that the windows were placed in the wall by virtue of any right or authority conferred by the party-wall agreement. In their original bill complainants claimed the windows were constructed by virtue of a verbal agreement, but this position was abandoned and in their amended bill they do not claim they were constructed by virtue of any agreement whatever. They do allege appellant knew of and acquiesced in their construction, but it is not now claimed that her consent to their construction was ever procured or asked. The windows were placed in the wall and the obstructions complained of built in clear violation of the written agreement, and if appellant is now barred from insisting upon the windows being closed and the obstructions removed it could only be upon the ground of an equitable estoppel, and this is what is mainly insisted upon by appellees.

The principal facts are, that in the winter of 1909-10 appellees erected a two-story building on their lot adjoining that of appellant, and in doing so built the party wall one story higher. They constructed seven windows in the wall overlooking the roof of appellant's building. In 1911-12 they built a third story and constructed two windows in the third-story party wall overlooking appellant's property. It does not appear that appellant made any complaint about these windows at that time. In September, 1912, appellant commenced the construction of a second and third story to her building for the residence of herself and husband, and in doing so she left an air-shaft or opening for light and

ventilation next to the party wall, about twelve feet square, from the top of the first story up through the roof, and thereupon, without consulting appellant, appellees closed all the windows in the party wall except one which opened into the air-shaft and constructed four others opening into the air-shaft,—two in the second story and two in the third,— at a cost, as we understand the proof, of $123. Appellant objected to the maintenance of the windows in the party wall, and in March, 1913, she notified appellees, in writing, to close them, whereupon this suit was begun.

We do not think the case presents any of the elements necessary to the application of the doctrine of equitable estoppel. There is a total lack of proof that appellees constructed the windows in the wall by virtue of any claimed right they had, under the written agreement or otherwise. It is not sufficient, to raise an estoppel against appellant, that she knew the windows were placed in the wall and did not object or take steps to prevent it at the time they were constructed. Appellees were not acting in ignorance of any of the facts. They knew a solid wall was contemplated by the agreement throughout its length and height, and must be presumed to have known that in putting the windows in the wall they were acting in violation of the agreement and were invading the rights of appellant. In order to claim the benefits of an equitable estoppel the party setting it up must have acted in ignorance that the state of facts upon which he claims to have relied was not the true state of facts. The only basis for the claim of estoppel against appellant is that she made no protest at the time the windows were put in the wall. It would be carrying the doctrine of equitable estoppel farther than it has ever been carried in any case we know of, to hold that appellant is barred from insisting that the wall be maintained in accordance with the written agreement. The purpose of placing and maintaining the windows in the wall originated with appellees, with-

out any claim of right upon which to base the purpose and without any statement, acts or conduct of appellant to mislead or deceive them. Her mere failure to object to the violation of her right at the time of the invasion, under such circumstances could not, upon any equitable grounds, give appellees a perpetual right to enjoy the fruits of their wrongful act. Appellees were not ignorant of any facts but were as cognizant of them as appellant. There was no element of fraud on the part of appellant. "There must be deception, and change of conduct in consequence, in order to estop a party from showing the truth." (*Davidson* v. *Young*, 38 Ill. 145.) In *Mullaney* v. *Duffy*, 145 Ill. 559, it was said where it is sought to establish an estoppel from the silence of a party who in equity and good conscience should have spoken, it is essential that the party sought to be estopped should have had knowledge of the facts and the other party have been ignorant of the truth and have been misled into doing that which he would not have done but for such silence. The rule was stated in *Holcomb* v. *Boynton*, 151 Ill. 294, as follows: "As we understand the doctrine of estoppel *in pais*, it is based upon a fraudulent purpose and a fraudulent result. Before it can be invoked to the aid of a litigant it must appear that the person against whom it is invoked has by his words or conduct caused him to believe in the existence of a certain state of things and induced him to act upon that belief. If both parties are equally cognizant of the facts and one has acted under a mistaken idea of the law, the other party cannot say he has been deceived thereby and is entitled to an application of the rule, but will be considered as having acted upon his own judgment, solely. The essential elements are, misrepresentation or concealment of material facts, ignorance of the truth of the matter by the party to whom the representations were made, and reliance upon his part in acting upon the representations.—2 Story's Eq. Jur. 1543;

*Davidson* v. *Young,* 38 Ill. 145; *First Nat. Bank of Quincy* v. *Ricker,* 71 id. 439; *Dinert* v. *Eilert,* 13 Brad. 99; Herman on Estoppel, 969." Under the facts and circumstances proven in this case, appellant's silence cannot reasonably be construed to be a consent to the trespasses, but it if could be, it would amount to nothing more than a parol license, revocable at any time. *Morse* v. *Lorenz,* 262 Ill. 115.

The second and third stories party wall was built three inches too far on appellant's lot by appellees through a mistake, and the court properly decreed her damages therefor.

Appellees claim the stairway in the rear of their building was constructed for a fire-escape and that the court erred in decreeing its removal. By the party-wall agreement appellees gave appellant an easement of passage over their land in consideration of her constructing the first-story party wall at her own expense. She performed her part of the agreement, and appellees cannot escape the performance of their part of it on the ground that the obstruction complained of was a fire-escape, which the law required them to construct and maintain in connection with their building.

In our opinion none of the cross-errors are well assigned.

That part of the decree requiring the removal of the stairway, the window shutters and hinges, and ordering appellees to pay appellant for the use of three inches of her land occupied by the second and third stories party wall, is affirmed. In all other respects the decree is reversed and the cause remanded, with directions to enter a decree on the cross-bill requiring appellees to close all windows in the party wall and for its future maintenance as a solid wall.

*Reversed in part and remanded, with directions.*