## Antillia Protective Association of Chicago, Appellee, v. Maurice E. Wolfsohn, Appellant.

### Gen. No. 31,279.

1. INJUNCTIONS—*when right to remedy not barred by laches.* A complainant for a mandatory injunction to restrain an encroachment on his land by defendant's building, and for removal of the encroachment made, who objected to the encroachment within four months after the building was begun and sent three letters to defendant further protesting, is not guilty of such laches as to compel him to seek his remedy at law.

2. INJUNCTIONS—*when action at law inadequate as remedy for building encroachment.* Encroachments by building over on his building which complainant seeks to enjoin cannot be compensated by repairs or money damages such as could be obtained in an action at law.

3. INJUNCTIONS—*when evidence of encroachment warrants order for removal of building.* With the evidence showing that defendant's encroachment by building over onto complainant's building was wilful, the slightness of the encroachment and the expense of its removal to defendant, will not bar complainant from his right to a mandatory injunction for removal thereof and against further encroachment.

Appeal by defendant from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1926. Affirmed. Opinion filed March 14, 1927.

CHARLES V. FALKENBERG, for appellant.

BENJAMIN G. POLLARD, for appellee.

. Mr. Justice Johnston delivered the opinion of the court.

This is an appeal by Maurice E. Wolfsohn, the defendant, from a decree against him in a suit in equity brought by the Antillia Protective Association of Chicago, the complainant, to restrain the defendant from encroaching on the complainant's property, and to compel the defendant to remove certain encroachments on the complainant's property.

There is no substantial dispute as to the facts. The defendant is the legal owner of premises improved by a three-story building, situated at 3522 South Michigan Avenue, a public thoroughfare in the city of Chicago. The defendant holds the premises as trustee for the Real Estate Mortgage and Bond Corporation. The front of the defendant's building sets back 20 feet from the sidewalk. The complainant is the owner of premises at 3524 South Michigan Avenue, adjoining the premises of the defendant. The property of the complainant is improved by a three-story building, the front of which also sets back 20 feet from the sidewalk. In March, 1925, the defendant began the erection of an additional building, three stories in height, to occupy the 20 feet of space in front of the building already on the premises. The plans for the additional building originally were drawn for a building 25 feet wide, and to cost over \$25,000, but the plans were subsequently changed for a building 8⅜ inches wider. When the construction of the additional building was commenced it was found that the buildings of the defendant and the complainant were joined by a party wall. The defendant instructed William Macintyre, attorney and president of the Real Estate Mortgage and Bond Corporation, and William H. Montgomery, sales manager of the Real Estate Mortgage and Bond Corporation, to negotiate with the complainant with the view to obtaining from the complainant a party wall agreement. As a result of the negotiations the complainant

agreed to enter into a written contract in regard to a party wall, and Percival Eugene Fray, a director and manager of the complainant, said to Macintyre and Montgomery, "It is perfectly satisfactory and agreeable; you can go ahead and build." Thereafter Macintyre submitted a party wall agreement to Fray, who objected to certain provisions in the agreement. The complainant did not sign the agreement. Macintyre prepared another agreement and submitted it to Fray, who presented it to the legal advisor of the complainant, who said it was not satisfactory. The complainant did not sign the agreement. Macintyre then stated that the complainant should prepare an agreement that the complainant considered satisfactory. Such an agreement was prepared but was never submitted to the defendant. While the negotiations in regard to the agreement were pending the defendant was proceeding with the erection of the party wall and the additional building, and was leasing office space in the additional building. The negotiations in regard to the agreement extended over a period of time beginning April, 1925, and ending August 1, 1925. Fray testified that while the party wall was being constructed he first objected to the wall in August or September, 1925; that he stated to the architect of the defendant that the terra cotta was not in accordance with the surveyor's line; that it encroached about 8 inches on the wall; that at the time of the conversation the terra cotta work had progressed about half way. An architect employed by the complainant to make a survey of the wall testified that in August, 1925, he told representatives of the defendant that they were encroaching 8⅜ inches on the complainant's property; that the wall was about two-thirds completed at that time.

The complainant wrote three letters addressed to the president of the Real Estate Mortgage and Bond Corporation suggesting that an appointment be made

to discuss the question of the encroachments on the property of the complainant made by the defendant. These letters were received by Montgomery in October, 1925, and were mailed by him to Macintyre. At the time the letters were received by Macintyre, all of the brick work on the additional building had been completed and the entire front of the building had been faced with terra cotta except three or four pieces near the cornice or gables. The cost of removing the encroachment would be approximately $2,500, and the removal of the encroachment without shifting the entire facing of the additional building would leave it unsymmetrical and unsightly.

There is no evidence from which it may be inferred that when Fray stated that the defendant could "go ahead and build," Fray meant that the defendant could build or use the wall so that there would be an encroachment on the property of the complainant.

In his decree the chancellor found as follows:

"That in the month of June, A. D. 1925, defendant built a wall 28 feet 4½ inches long, 42 feet high, and 17⅝ inches in width. That said defendant built said wall on and over the North boundary line of complainant's property and the South boundary line of defendant's property. That said wall extends 28 feet 4½ inches in length, 42 feet in height and 8⅜ inches in width on the North side of complainant's property and that said defendant faced the frontage of said wall with terra cotta over the said 8⅜ inches of width and about 42 feet in height on complainant's property.

"That the defendant built said party wall with the consent of complainant and faced said wall with terra cotta without the consent and over the objection of the Antillia Protective Association of Chicago, a corporation, complainant.

"That the complainant corporation and the defendant orally agreed that the said complainant corporation was and is to have full use of said wall, both on the

south side of said wall and on the frontage of said wall to the extent of 8⅜ inches, measuring from the south end of the frontage of said wall without cost to said complainant corporation.

"That the defendant, Maurice E. Wolfsohn, by the facing of said wall intentionally encroached on complainant's property to the extent of 8⅜ inches in width and about 42 feet in height on its frontage without complainant's consent and without any fault on behalf of complainant.

"That the defendant, Maurice E. Wolfsohn, had and has no right to encroach on the said 8⅜ inches in width and 42 feet in height on complainant's property and that complainant was and is entitled to a permanent and mandatory injunction against the defendant to prevent the defendant from continuing to place terra cotta or any other material on the frontage of said wall on complainant's property, and to compel defendant to remove the said terra cotta now existing on said wall covering the said 8⅜ inches of width and about 42 feet of height on complainant's property."

The order of the decree is as follows:

"It is therefore Ordered, Adjudged and Decreed that the defendant Maurice E. Wolfsohn, his agents, servants, solicitors, attorneys, lessees, representatives and assigns be and they, and each of them, are hereby permanently restrained from in any manner or way building or placing the said terra cotta facing or any other material on or against the said 8⅜ inches of width and about 42 feet in height on the frontage of said wall so that the same may in any manner or way encroach upon or extend into the property of complainant, and he or they, and each of them, are hereby ordered to remove the said terra cotta now existing on face of complainant's property, which extends over and constitutes the encroachment on said complainant's property.

"That such removal is to be made when and only when the complainant, the Antillia Protective Association, Chicago, a corporation, erects, constructs and builds a permanent brick extension to its present building and on the aforesaid lot four, etc., and provided the said extension shall be extended to a point in alignment with the defendant's front or east wall and not before, and provided further, construction of complainant's extension shall be deemed to have been commenced when complainant has submitted plans for said extension, to the proper officer of the City of Chicago, and a foundation wall has been constructed, and provided further, that said terra cotta facing shall be removed by defendant as the complainant's said extension is erected and constructed and only to a point in height on which said extension is erected."

We are of the opinion that the decree of the chancellor is correct. In our view, the defendant proceeded with the construction of the party wall and the terra cotta work at his peril.

Counsel for the defendant contends that it is the rule that "where a party wall encroaches on the property of an adjoining owner, but the owner allows the building to be completed without complaint, he is guilty of laches and an injunction will not lie in his favor, but he will be left to his remedy at law." We do not thing that this rule is applicable to the facts in the case at bar.

Counsel for the defendant further contends that the facts do not justify the interposition of a court of equity; that the complainant has not been irreparably damaged in the sense that the injury complained of cannot be repaired or restored or adequately compensated for in money; that, therefore, the remedy of the complainant is at law. We do not think that the contentions are correct. In our view, it is manifest that the complainant would not have an adequate remedy at law.

Counsel for the defendant further contends that in view of the facts that the encroachment was slight and "unintentional"; that no appreciable damage has been sustained by the complainant; that the removal of the encroachments would be difficult and expensive, it would be inequitable to allow a mandatory injunction requiring the defendant to remove the encroachment. In support of his contention counsel cites the following cases: *Lynch v. Union Institution for Savings,* 159 Mass. 306, 310; *Methodist Episcopal Soc. in Charlton City v. Akers,* 167 Mass. 560, 564.

The answer to the contention of counsel is that in the case at bar, according to the undisputed evidence, the encroachment was not an "unintentional" one. On the contrary, it was an intentional and wilful encroachment. We are of the opinion that the mandatory injunction was proper. The rule is that a mandatory injunction ordinarily will issue against the maintenance by a landowner of an encroachment on the land of an adjoining owner to compel the removal of such encroachment; and if the encroachment was intentional, the absence of present damage to the owner of the land encroached on will not defeat his right to an injunction. *Pradelt v. Lewis,* 297 Ill. 374, 377. In the circumstances the defendant could not, by constructing the party wall and the building, deprive the court of the right to compel the restoration of the status of the parties. The duty of the courts is to protect rights, and innocent complainants cannot be required to suffer loss of their rights because of the expense to the wrongdoer. *Gulick v. Hamilton,* 287 Ill. 367, 374.

For the reasons stated the decree of the chancellor is affirmed.

*Affirmed.*

McSurely, P. J., and Matchett, J., concur.