(No. 34945.—)

SAVERIO ARIOLA *et al.,* Appellants, *vs.* DANIEL M. NIGRO *et al.,* Appellees.

*Opinion filed January 23, 1959—Rehearing denied March 18, 1959.*

HOFFMAN & DAVIS, and CROWLEY, SPRECHER & BAR-
RETT, both of Chicago, (MAURICE L. DAVIS, ROBERT A.
SPRECHER, and FRANK A. KARABA, of counsel,) for ap-
pellants.

BROWN, DASHOW & LANGELUTTIG, and GUERINE &
GUERINE, both of Chicago, (ALBERT LANGELUTTIG, JACK
JOSEPH, and IRA J. FRIEDMAN, of counsel,) for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the
court:

This is a direct appeal by both plaintiffs and defendants
from a decree of the circuit court of Cook County allow-
ing plaintiffs damages for a roof drainage system removed
by defendants, but denying plaintiffs' request for a manda-
tory injunction to compel defendants to remove such por-
tion of their building as encroaches on plaintiffs' property
and destroys plaintiffs' easement for rain gutters and down-
spouts.

The issues are essentially whether the mandatory in-
junction was properly denied under the circumstances of
this case, and whether the measure of damages, limited to
the cost of installing a drainage system similar to that
originally enjoyed by plaintiffs, was proper.

From the record it appears that since June 9, 1925,
plaintiffs Saverio Ariola and Susanna Ariola were owners
in joint tenancy of the property at 818 N. Twenty-third
Avenue, Melrose Park, which was improved with a two-
story house occupied by them and their children, the other
plaintiffs herein, as a family home.

The Ariola property fronts on Twenty-third Avenue
and extends west for a distance of approximately 50 feet
along Iowa Street on the north, and for 51 feet along
Lake Street on the south. Immediately to the west of the
Ariola property is the Nigro property, held in joint ten-
ancy by defendants. This property, known as 2305 Lake

Street, fronts on Lake Street, and extends along that street for some 77 feet 3½ inches, and along Iowa Street on the north for some 75 feet 1¾ inches. The property was improved with a one-story building, until October, 1948, when defendants commenced construction of an addition.

According to the testimony of defendants' mason contractor, he excavated right up to plaintiffs' building foundation, put in forms only on one side and poured concrete flush against plaintiffs' foundation, so that the east part of defendants' foundation is flush with the west part of plaintiffs' building.

Special surveys made at plaintiffs' request by registered surveyors before defendants' brick work was superimposed, indicated that defendants' foundation encroached upon plaintiffs' property to the extent of 1 inch at the northeast corner of defendants' foundation and some 2⅜ inches at the southeast corner of the foundation. Plaintiffs thereupon notified defendants of the encroachment and requested them to discontinue construction. Notice was also given by plaintiffs' attorney to defendant Nigro and to his attorney. Nevertheless, defendants proceeded with the construction of the two-story brick addition, which according to plaintiffs' surveys also encroached to the same extent above ground level. Defendants, however, deny any such encroachment, and their mason contractor testified that the village markers were followed, and that plaintiffs' foundation was irregular and encroached on defendants' property.

It appears further from defendant Daniel Nigro's testimony as an adverse witness that before construction began he had notified plaintiffs that defendants would occupy all of their property, and that it would be necessary for plaintiffs to remove their projecting gutters and downspouts along the west wall.

The evidence is controverted as to the length of time plaintiffs' gutters and downspouts projected from plaintiff's west wall. On plaintiffs' behalf, their original builder

and other witnesses testified that the gutters and down-spouts were originally installed along the west wall in 1925, when the house was built, and have remained there since that time. On defendants' behalf, his former partner testified that the gutters were not there in 1945, that there had been gutters on the south wall, as suggested by a photograph showing some discoloration on the south wall, possibly from rain gutters; and the brother of defendants' attorney stated that as plaintiffs' agent he had secured permission from defendants to install the gutters about a year and one-half before they were torn down. However, a plat of survey, introduced by defendants, and dated June 7, 1941, contained the notation, "downspouts and gutters project 6″ west of line."

In any event, plaintiffs refused to remove the gutters, and, according to defendants' admission and the testimony of their builder, defendants ordered that they be torn down and that the construction of the building proceed as planned.

The evidence further shows that upon plaintiffs' refusal to pay half the cost of installing a "saddle" type drainage installation, defendants, unbeknown to plaintiffs, installed a tar paper flashing between the east wall of the new building and the west wall of plaintiffs' home, to prevent drainage of rain water and melting snow between the two buildings. This flashing, according to the testimony of both plaintiffs' and defendants' witnesses, was not very effective and caused the accumulation of water along the west wall of the Ariola building, with resulting seepage and rotting of the plaster flashing on the inside of plaintiffs' wall and deterioration of the mortar joints between the bricks. Plaintiffs offered evidence that such seepage did not occur prior to 1948.

Upon discovery of the tar paper flashing in 1951, some two years after it was installed, plaintiff Ariola's son kicked a hole in it in order to permit the water to drain off. His testimony as to the accumulation of several

inches of water at the west end of the roof was corroborated by the commercial photographer who saw the premises in 1951.

On the basis of substantially the foregoing evidence, the master and the trial court found in substance that there were reciprocal foundation encroachments of a minimum nature, which did not warrant equitable intervention; that plaintiffs' building had a roof drainage system which projected into defendants' premises; that since the system existed in open view uninterruptedly from 1925 to 1948, plaintiffs had acquired an easement thereto; that inasmuch as plaintiffs did not claim the existence of such easement until January 13, 1949, when they set up the matter in reply to defendants' counterclaim, after defendants' had completed the building, plaintiffs' right to equitable relief was barred by *laches*. The trial court thereupon allowed plaintiffs damages only for the installation of a new drainage system as good as the one destroyed by defendants, and denied plaintiffs damages for the injury and deterioration to their building.

On a previous appeal to this court, the cause was remanded on the ground that no final appealable order was entered. A supplemental decree of June 3, 1958, from which this appeal is taken, provides that questions of plaintiffs' damages and master's fees are no longer reserved, and contains an express finding of appealability.

In determining the merits of this cause, we recognize that the remedy of a mandatory injunction has generally been invoked by courts to compel adjoining landowners to remove encroachments. (28 Am. Jur. 335; 28 A.L.R.2d 679.) In issuing such injunctions courts have considered such factors as the expense and difficulty of removing an encroachment in relation to the damage resulting therefrom, or the benefit that would accrue from its removal. (28 A.L.R.2d 629.) However, where the encroachment was intentional, in that defendant proceeded despite notice

or warning, or where he failed to take proper precautions to ascertain the boundary (*Nitterauer* v. *Pulley*, 401 Ill. 494,) the courts, including those of Illinois, have refused to balance the equities, and have issued the mandatory injunction without regard to the relative convenience or hardship involved. 28 A.L.R.2d 705; *Pradelt* v. *Lewis*, 297 Ill. 374; *Antillia Protective Ass'n*, v. *Wolfsohn*, 244 Ill. App. 71; *Tyler* v. *Haverhill*, 272 Mass. 313, 172 N.E. 342; *Finch* v. *Theiss*, 267 Ill. 65; *Agmar* v. *Solomon*, 87 Cal. App. 127, 261 Pac. 1029; *Fanger* v. *Fischer*, 224 App. Div. 667, 229 N.Y.S. 522; *Fisher* v. *Goodman*, 205 Wis. 286, 237 N.W. 93; *Crosby* v. *Blomerth*, 258 Mass. 221, 154 N.E. 763; *Baldocchi* v. *Four Fifty Sutter Corp.* 129 Cal. App. 383, 18 P.2d 682; *Mobile & Ohio Railroad Co.* v. *Zimmern*, 206 Ala. 37, 89 So. 475; 23 Ill. Bar J. 125.

In the *Haverhill case* the Massachusetts court, in ordering the removal of an encroaching heavy masonry wall, stated: "One who knows of a claim to land which he proposes to use as his own proceeds at his peril if he goes forward in the face of protest from the claimant and places structures thereon."

The leading Illinois case respecting land encroachments is *Pradelt* v. *Lewis*, 297 Ill. 374. The foundation of the defendant's three-story building was placed upon the common lot line, and when one of the walls began to lean, it encroached some 4 inches upon plaintiff's wall, resting upon the wall of plaintiff's frame building, and causing the plaster to crack and other damages. The court, after referring to the rule that an injunction will be denied where the encroachment is slight and the cost of removing it great as compared with any corresponding benefit to the adjoining owner, stated that if the encroachment is intentional, neither the expense involved, nor the absence of damage to the land encroached upon will defeat the right to an injunction. The court then concluded that the encroachment therein was not unintentional as defined by

the courts, and issued the mandatory injunction compelling the removal of the encroachment. The court stated at page 378 that "the duty of the courts is to protect rights, and innocent complainants cannot be required to suffer the loss of their rights because of expense to the wrongdoer."

The *Nitterauer case* expanded the concept of "intent" to include failure to take adequate precautions to ascertain that one is building upon his own property.

In the more recent case of *The Fair* v. *Evergreen Shopping Plaza,* 4 Ill. App. 2d 454, the court, in holding that there was no occasion for balancing the equities, stated at p. 470; "The erection of the bay was intentional, after plaintiffs had objected on the first day the work started."

In the instant case, while defendants and their mason contractor deny any encroachment upon plaintiffs' property and testified that stakes were set out according to the village survey marks, it is nevertheless undisputed that defendants' contractor excavated up to plaintiff's foundation, put in forms only on one side and poured concrete between the forms and plaintiffs' foundation, so that plaintiffs' foundation, rather than any survey marks, became the boundary. Moreover, while defendants submitted surveys, they make no reference to the location of the foundation, whereas plaintiffs' professional surveys made before the brick work was superimposed upon the new foundation, indicated that it encroached upon plaintiffs' property to the extent of 1 inch at the northeast corner of the foundation to 2⅜ inches at its south end.

The case is in some respects analogous to *Agmar* v. *Solomon* (Cal.) 261 Pac. 1029, cited by plaintiffs, where the plaintiff's rain gutters and downspout also projected from the side of their building closest to defendant's property. According to the survey of the defendant in that case, there was ¾ of an inch between his property line and plaintiff's house, and plaintiff's gutters were on his property. In reliance thereon, defendant constructed his

building almost flush with plaintiff's. It was found, however, that defendant's building encroached on plaintiff's property about 4½ inches. The California court, upon concluding that the encroachment was intentional, since the rain gutters standing out beyond the line shown on defendant's survey were open and notorious notice to defendant and the world that plaintiff was claiming title beyond the line claimed by defendant, issued a mandatory injunction compelling the removal of defendant's structure, and cited, as authority, the Illinois case of *Pradelt* v. *Lewis*.

In the instant case, defendants had actual notice at the outset of construction that the foundation encroached on plaintiffs' property, and while plaintiffs' gutters did extend onto defendants' property, their continued presence over the years, together with plaintiffs' refusal to remove them, should have apprised defendants that plaintiffs claimed the legal right to maintain them. Defendants' encroachment was therefore just as deliberate as that involved in the *Agmar case;* and since plaintiffs herein suffered extensive damages, stronger grounds for granting a mandatory injunction are presented.

We do not find the Colorado case of *Golden Press, Inc.* v. *Rylands*, 124 Colo. 122, 235 P.2d 592, determinative. The 2-inch encroachment of the footings of defendant's structure therein, at a point some 7 inches below the surface, was made in good faith, and in no way injured the plaintiff's property, or affected its use, except on the remote contingency that the plaintiff might someday dig a basement. The denial of the injunction under those circumstances would not constitute a precedent for the instant case, where the encroachment was deliberate and caused plaintiffs extensive damages.

Plaintiffs argue further that there is an additional and even more cogent ground for the issuance of an injunction in the instant case, in that defendants' structure destroyed

plaintiffs' easement for their projecting roof drainage system along the west wall of their building. Defendants deny that plaintiffs acquired any such easement by adverse possession, and have filed a cross appeal from such a finding by the master and the trial court. In support thereof, defendant Nigro calls attention to the testimony of his former partner that there were no gutters along plaintiffs' west wall in 1945; and to the testimony of his lawyer's brother that he acted as plaintiffs' agent to secure defendants' permission to install the gutters a year and a half before. That testimony, however, is refuted by defendants' own exhibit of a survey dated June 7, 1941, containing a notation that plaintiffs' gutters and downspouts project 6 inches west of the property line. The photograph upon which defendants also rely, showing some discoloration on the south wall, possibly from rain gutters, at most suggests that at one time plaintiffs' building may have also had a downspout on the south wall. It in no way detracts from the testimony of plaintiffs' original builder, corroborated by others who saw the premises daily over the years, that the gutters and downspouts were installed on the west wall at the time the building was constructed in 1925 and have remained there ever since.

Consequently, it is our judgment that the master's findings, affirmed by the court, that plaintiffs acquired an easement for the maintenance of their gutters along the west wall is well substantiated by the evidence.

It is firmly established by our case law that a mandatory injunction may be issued to protect the enjoyment of an easement. (*Gerstley* v. *Globe Wernicke Co.* 340 Ill. 270; *Turney* v. *Shriver,* 269 Ill. 164; *Espenscheid* v. *Bauer,* 235 Ill. 172.) In the instant case, however, the trial court held that plaintiffs' *laches* barred such injunctive relief. Inasmuch as defendants failed to set forth that affirmative defense in their answer, as required under section 43 of the

Civil Practice Act (Ill. Rev. Stat. 1955, chap. 110, par. 43), it should not properly be considered. (*Bowman* v. *Pettersen,* 410 Ill. 519.) However, even if it were available, that defense is without merit.

This court has repeatedly held that mere delay in asserting the easement will not bar the assertion of the right. There must be, in addition, something in the conduct of the complainant which would make it inequitable to permit him to assert his right. (*Yunkes* v. *Webb,* 339 Ill. 22; *Finch* v. *Theiss,* 267 Ill. 65; *Gerstley* v. *Globe Wernicke Co.* 340 Ill. 270.) In the *Gerstley case* the court stated that "it is only when by delay or neglect to assert a right the adverse party is lulled into doing that which he would not have done or into omitting to do that which he would have done in reference to the property had the right been properly asserted that the defense of *laches* can be considered."

In the case at bar plaintiffs at no time lulled defendants into proceeding with the construction of the building. On the contrary, even prior to construction, defendants were put on notice that plaintiffs asserted rights with reference to the projecting gutters and downspouts when they refused to remove them as defendants requested. Moreover, as soon as possible after construction began, plaintiffs sought injunctive relief against the encroaching foundation. The fact that plaintiffs did not also seek a mandatory injunction to protect their easement until January 13, 1949, would in no way constitute *laches,* as defined by this court, in view of plaintiffs' pending action against the same structure, which affected their easement. As stated in *Welton* v. *40 E. Oak St. Bldg. Corp.* (7th Cir. 1934) 70 F.2d 377, one of the leading cases in this area respecting building encroachments, "The important and determining fact (as to whether the defense of *laches* will lie) is that appellant at all times protested and challenged the company's right to proceed with the construction of the building."

In the *Welton case* the court went to great lengths to protect an easement. Plaintiffs therein had merely contested the action of the zoning board in varying an ordinance and did not seek a mandatory injunction to protect their easement to light and air across a 16-foot alley, until after defendant's building was completed. Despite the fact that it would cost almost $350,000 to reconstruct the 20-story building, the court issued such a mandatory injunction to protect plaintiffs' easement, and rejected the contention that plaintiffs were guilty of *laches* for failure to seek such relief, in addition to other remedies, until after the building was completed.

In the light of the foregoing analysis and authorities, it was error for the circuit court to deny plaintiffs' request for a mandatory injunction under the circumstances of defendants' deliberate boundary encroachment and their destruction of plaintiffs' easement.

With reference to the issue of damages, the rule is well established that one who trespasses or assumes control over the property of another without authority is responsible for all the consequences. (*Donovan* v. *Consolidated Coal Co.* 187 Ill. 28; *Gray* v. *Waterman,* 40 Ill. 522.) More specifically, where buildings are damaged, but not totally destroyed by trespasses, the measure of damages is the cost of repair or of restoring the premises to their original condition. *Donk Bros. Coal Co.* v. *Novero,* 135 Ill. App. 633; *Johnson* v. *Pagel Clikeman Co.* 343 Ill. App. 346; *Clark* v. *Public Service Co. of Northern Illinois,* 278 Ill. App. 426; *Swanson* v. *Nelson,* 127 Ill. App. 144, 149.

In the instant case the installation of a tar paper flashing to bridge the space between the parapet of defendants' building and the west edge of plaintiffs' roof, made at defendants' direction and without plaintiffs' consent, constituted a continual trespass. (*Northern Trust Co.* v. *Palmer,* 171 Ill. 383.) There is substanstial evidence that as a result of this trespass water accumulated along the west end of

58

the Ariola roof and caused seepage which, in turn, produced extensive damage to plaintiffs' building during the two years before plaintiffs discovered the flashing.

Nevertheless, the trial court limited plaintiffs' damages to the value of a roof drainage system of the same character and extent as the one wrongfully removed by defendants, on the theory that plaintiffs failed to avoid damages by installing an alternative drainage system. That conclusion, however, fails to recognize that it was defendants' intentional trespass and unauthorized installation of the flashing that was the cause of the water accumulating, and the ensuing damage. Plaintiffs should not be compelled to pay for defendants' wrongful act; nor were plaintiffs obliged to pay for half the cost, as requested by defendants, of a saddle-type drainage installation made necessary by defendants' building encroachment and deliberate destruction of plaintiffs' gutters. Their refusal to do so in no way constituted a failure to do equity; hence, the measure of damages adopted by the trial court was improper.

It is our judgment, therefore, that this cause should be reversed and remanded with directions to issue the mandatory injunction as prayed for by plaintiffs, and to award all damages resulting directly from defendants' intentional trespass.

*Reversed and remanded, with directions.*